358 So.2d 1268 (1978)
STATE of Louisiana
v.
Errol BERNARD.
No. 61078.
Supreme Court of Louisiana.
May 22, 1978.
C. James Hicks, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Brian G. Meissner, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
In a trial by jury defendant Errol Bernard was found guilty of second degree *1269 murder and sentenced to life imprisonment at hard labor. Four assignments of error are urged on this appeal.
Assignment 1: Defendant testified on his own behalf. He stated that on April 18, 1975, at approximately 11:30 a. m., he was walking in the 2400 block of Third Street in the city of New Orleans on the way to his mother's house in the Magnolia Project. As he approached the victim Vernon Frankie Joseph and another man, Joseph grabbed defendant by the collar and started to punch him. A scuffle ensued in which Joseph grabbed defendant around the neck and choked him, declaring "I'm going to kill you, nigger." Defendant then drew his pistol from his belt beneath his shirt and shot Joseph.
Although defendant had never seen Joseph before, he did recognize Joseph's blue jeans and sweat shirt to be institutional clothing similar to that worn by prisoners at the work release program not far away.
Under these circumstances, considering the assault, his assailant's garb and the threat to kill him, defendant testified he was in fear of his life. He further testified that Theodore Hunter was in Joseph's company at the time and because of his proximity he should have heard Joseph's threat to kill him. After the shooting, defendant testified that he asked Hunter why Joseph assaulted him since he did not know Joseph. However, Hunter testified that although he heard the shot he was across the street at the time, facing the opposite direction and did not see the shooting or hear the threat.
Following the shooting defendant walked away heading for the Magnolia Project. Police were called to investigate. They questioned several people in the neighborhood, none had actually seen the struggle and shooting. However, some did see defendant standing over the victim's body after the shooting. Two of these witnesses accompanied the investigating officers to search for the defendant. They found him about four blocks from the scene in the courtyard of Magnolia Project. He was not hiding and made no effort to flee. A .38 caliber pistol was in his possession. He was arrested and driven to central lockup. Soon thereafter defendant gave a statement in which he stated the facts testified to at the trial.
A medical doctor from the Coroner's office testified that the gunpowder and the imprint of the gun barrel on the victim's side where the bullet entered convinced him that the victim was shot at very close range. One of the officers testified that at the time of the arrest defendant stated, "I had an argument with him and shot him." The officer testified that the shooting occurred in broad daylight. According to the other arresting officer, defendant was discovered walking in a "stunned" manner at the site of his arrest four blocks from the shooting. There were no eyewitnesses to the shooting.
In his opening statement defense counsel announced that the accused would rely upon self-defense in its case. In his presentation defense counsel sought to establish by the foregoing evidence the victim's hostile demonstration or overt act in order that he might introduce evidence of the victim's bad character. In this connection the defense sought to introduce in evidence an affidavit dated July 29, 1958, and signed by a police officer. The affidavit filed in the Criminal District Court of Orleans Parish charged that the victim, Joseph, committed aggravated battery upon his wife Verna with a pop bottle. Defense counsel also tried to introduce a written statement given to the police by Dorothy Jordan on December 26, 1958 wherein she declared Joseph raped her.
The trial judge ruled these documents inadmissible, basing his ruling on the hearsay character of the documents, neither party who signed them having been called as witnesses to testify to their content. He was also of the opinion that no overt act had been shown.
Assuming, without deciding, that there was appreciable evidence of an overt act, the question is then whether the evidence of the July 1958 aggravated battery and the December 1958 rape was admissible.
*1270 Once an overt act is established, evidence pertaining to the victim's character is admissible to show defendant's reasonable apprehension of danger which would justify his conduct and to help determine who was the aggressor. State v. King, 347 So.2d 1108 (La.1977).
In order for character evidence to be admissible to show defendant's reasonable apprehension of danger, it must be shown that the defendant knew of the victim's prior acts of violence or reputation for violence. In this case defendant, by his own admission, did not know the victim and had never seen him. Because he did not know the victim, he could not have known that in 1958 the victim committed an aggravated battery on his wife and raped Dorothy Jordan, almost seventeen years prior to the alleged shooting. Thus, this evidence pertaining to the victim's violent character would not be admissible to show defendant's apprehension of danger in order to justify the shooting.
If the evidence is sought to be introduced to help determine who was the aggressor, the evidence, by statute and decisions of this Court, must be limited to general reputation of the victim, not specific acts. See State v. Boss, 353 So.2d 241 (La. 1977). As explained in Boss, evidence introduced to prove a party's character in order to corroborate a contention that he was the aggressor in an encounter must conform with the rule of Section 479 of Title 15 of the Revised Statutes. By that section "Character, whether good or bad, depends upon the general reputation that a man has among his neighbors, not upon what particular persons think of him."
For this reason the evidence of the 1958 battery and rape was inadmissible for the purpose of supporting a claim that the victim Joseph was the aggressor in the 1975 encounter with defendant. "Only evidence of general reputation, not evidence of specific acts or personal opinion, is admissible to establish who was the aggressor in the conflict." State v. Boss, supra. The defense made no effort to introduce evidence of general reputation. This assignment is therefore without merit.
Assignment 2 Defendant contends the trial judge made two improper remarks which influenced the jury to the defendant's prejudice. Defense counsel was interrogating the defendant who had taken the stand in his own behalf. In an effort to explain why defendant was carrying the .38 caliber revolver used to kill Joseph, defense counsel established that defendant had been shot in the stomach some time in the past while standing on the porch of a friend's apartment in the Magnolia Project. Having testified that he was shot in the stomach, defendant was asked, "How long is the scar?" Defendant replied, "About about twenty inches." At this point the trial judge remarked, "What's that got to do with it? Maybe the doctor had a big hand so he had to put a big scar there."
At another time thereafter in defense counsel's interrogation of defendant, the following occurred:
"Q. By institutional clothing, what do you mean?
A. I mean clothing that you are officiated that are given to you when you are institutionalized in the jail, prison, or whatever, even the hospital. You're issued a robe and pajamas, and in jail you are issued jeans and sweatshirts, not in this jail particularly, not back here, but at one time or another they used to do it, but they stopped all this now.
BY THE COURT: How do you know this?
A. I had been back here before, your Honor."
This record does not disclose that the defense either objected to the trial court's comment, moved for a mistrial or asked that the jury be admonished to disregard the comment. La.Code Crim.Pro. arts. 770-71. Therefore, the trial judge had no opportunity to cure the alleged error. Consequently the matter is not properly presented for review in this Court. La.Code Crim. Pro. art. 841.
Assignment 3: During defendant's testimony it is contended the trial judge *1271 questioned him concerning prior arrests contrary to the proscription of Section 495 of Title 15 of the Revised Statute that ". . . no witness . . . can be asked on cross-examination whether or not he has ever been indicted or arrested. . . ." No defense objection was made and the matter is not reviewable. La.Code Crim.Pro. art. 841.
Assignment 4: It is asserted that it was error for the trial judge to refuse to grant a motion for a continuance to allow defendant additional time to locate witnesses for the defense.
Claudette Pollard, an alleged eyewitness to the shooting, had been subpoenaed by the defense but could not be located. Additional time was needed, according to the defense, to locate her in order that she might be subpoenaed and compelled to attend the trial and testify on behalf of the defendant.
On the day the case was set for trial defense counsel filed a written motion wherein these facts were set forth. It was also alleged that new witnesses and new evidence had recently been brought to counsel's attention; two of these witnesses were out of town and arrangements were being made for them to be present at the trial shortly.
When the motion for continuance was urged during the trial it was denied. The trial judge was of the opinion that Claudette Pollard could not have been an eyewitness because of the evidence already received at the trial to the effect that all persons in a position to observe what had happened had been interviewed. Pollard was not among them.
Furthermore, a continuance shall not be granted after the trial has commenced. La. Code Crim.Pro. art. 708. The facts to which the two out-of-state witnesses were expected to testify, showing the materiality of their testimony and necessity for their presence at trial, were not set forth in the motion for continuance as required by Article 709 of the Code of Criminal Procedure. Defendant had been charged since May 1975 and had ample time to locate and subpoena these witnesses before this January 1976 trial. There was no error in the ruling denying the continuance.
For the reasons assigned, the conviction and sentence are affirmed.