365 So.2d 1313 (1978)
STATE of Louisiana
v.
Milton Bradley GOMEZ, Jr.
No. 62106.
Supreme Court of Louisiana.
December 15, 1978.
Rehearing Denied January 26, 1979.
*1314 Ronald S. Macaluso, Seale, Sledge, Macaluso & Ross, Hammond, for defendant-appellant.
*1315 William J. Guste, Jr., Atty. Gen., Patrick G. Quinlan, Barbara Rutledge, Asst. Attys. Gen., Leonard E. Yokum, Dist. Atty., Joseph H. Simpson, Asst. Dist. Atty., L. J. Hymel, Jr., Asst. Atty. Gen., for plaintiff-appellee.
MARCUS, Justice.
Milton Bradley Gomez, Jr. was indicted by the grand jury for manslaughter in violation of La.R.S. 14:31. After trial by jury, he was found guilty and sentenced to serve five years at hard labor. On appeal, defendant relies on twenty-seven assignments of error for reversal of his conviction and sentence.[1]

ASSIGNMENT OF ERROR NO. 1
Defendant contends the trial judge erred in refusing to allow him the opportunity to impeach the testimony of a state witness.
Defendant was the manager of a tire mart where he and the victim were employed. On the morning of the alleged offense, defendant had informed the employees that, because of previous cash register shortages, only defendant was to operate the register that day. Later that afternoon, defendant overheard a conversation between the victim and another employee in which the victim stated that he was tired of being accused of something he did not do. Defendant asked the victim if he wanted his pay check; he replied that it made no difference to him. Whereupon, defendant began to make out the victim's check. At this point, defendant informed the victim of a debt he owed the store. The victim then stated that defendant could keep the check and he would consider the debt settled. Thereupon, the victim walked out of the side door toward his car; however, he immediately returned (kicking the door open), pushed defendant and demanded that defendant give him his pay check in full. Defendant walked behind the counter and stated that he would telephone the owner of the mart. The victim responded that defendant would not call anyone and grabbed the base of the telephone, jerking the receiver out of defendant's hands. Defendant ducked underneath the counter, came up with a pistol in his hands and fatally shot the victim.
Adolph Zanders, an employee of the tire mart who witnessed the shooting, was called as a state witness. On direct examination, he stated that he did not recall whether or not defendant cocked the hammer when he pulled the pistol from under the counter and shot the victim. On cross-examination, he stated that the hammer of the pistol was not cocked when defendant brought it up from under the counter. Defense counsel then questioned the witness about a prior statement given to a defense investigator in which Zanders allegedly stated that the hammer of the pistol was cocked before it was fired. At first, the witness admitted that he previously stated that defendant cocked the hammer when he brought the pistol up from under the counter but, upon further cross-examination, he denied his prior statement that the hammer was cocked. The prior statement was repeated several times during the questioning of the witness by defendant. On each occasion, the witness denied that he had stated that the hammer of the pistol was cocked before it was fired.
Defendant then attempted to call Bruce Childress, the investigator to whom the prior statement was allegedly made, to testify for the limited purpose of playing that portion of a tape recording of Zanders' prior statement in which Zanders purportedly stated that the hammer of the pistol was cocked before the shot was fired. The state objected on the ground that Zanders had admitted making the prior contradictory statement. The trial judge sustained the objection.
*1316 Each side has the right to impeach the testimony and credibility of every witness sworn on behalf of the other side. La.R.S. 15:486. La.R.S. 15:493 provides:
Whenever the credibility of a witness is to be impeached by proof of any statement made by him contradictory to his testimony, he must first be asked whether he has made such statement, and his attention must be called to the time, place and circumstances, and to the person to whom the alleged statement was made, in order that the witness may have an opportunity of explaining that which is prima facie contradictory. If the witness does not distinctly admit making such statement, evidence that he did make it is admissible.
La.R.S. 15:493 thus permits the credibility of a witness to be impeached by proof of any statement made contradictory to his testimony at trial. If, however, a witness distinctly admits having made a prior contradictory statement, evidence that the statement was made is inadmissible. La. R.S. 15:493; State v. Mosely, 360 So.2d 844 (La.1978); State v. Bennett, 357 So.2d 1136 (La.1978).
A review of Zanders' entire testimony does not convince us that he distinctly admitted making the prior contradictory statement. Hence, evidence that he did make it would have been admissible to impeach the credibility of the witness. The trial judge erred in sustaining the state's objection to the offer of proof.
Nevertheless, the error was not reversible. Had defendant been permitted to impeach Zanders, at most he would have been able to place Zanders' prior contradictory statement before the jury. Defendant, in cross-examination of Zanders, repeatedly made reference to and quoted from Zanders' prior contradictory statement. Thus, the jury was fully informed of the nature and content of this prior contradictory statement. Since the ultimate purpose of impeaching Zanders was to place before the jury the content of this prior contradictory statement, this was in fact accomplished by defendant during cross-examination of Zanders. See State v. Wilson, 360 So.2d 166 (La.1978); State v. Lewis, 354 So.2d 566 (La.1978); State v. Clark, 325 So.2d 802 (La.1976). Moreover, defendant testified on cross-examination that the hammer of the pistol was not cocked immediately before the shot was fired. Defendant's testimony, therefore, was in accord with Zanders' trial testimony. Hence, under the facts and circumstances here presented, any prejudice resulting from the ruling of the trial judge was removed by defendant's cross-examination of Zanders and the subsequent testimony of defendant.
Assignment of Error No. 1 is without merit.

ASSIGNMENTS OF ERROR NOS. 2 AND 3
Defendant contends the trial judge erred in sustaining the state's objections to testimony of defendant and another defense witness concerning the physical and mental condition of the victim. He argues that the testimony was admissible for two distinct purposes: (1) to show defendant's reasonable apprehension of danger which would justify his conduct; and (2) to help determine who was the aggressor in the conflict.
On direct examination, defendant was asked if he was aware of any mental problems involving the victim. The state objected. Defense counsel argued that defendant's answers to the proposed questions would bear on both the victim's and defendant's state of mind at the time of the shooting. The trial judge sustained the state's objection (Assignment of Error No. 2).
Sharon Rae Vartan, the victim's girlfriend, was called as a defense witness. Defense counsel indicated that Ms. Vartan would testify that she knew both the victim and the defendant and had worked part-time at the tire mart. She had also lived with the victim from October 1975 until the date of the fatal shooting (August 18, 1976).
*1317 In May 1976, she and the victim were involved in a serious automobile accident after which the victim's actions and mood "changed for the worse." Defense counsel further stated that Ms. Vartan would have testified as to the friendly relationship between defendant and the victim prior to the accident. On the day of the shooting, the victim purportedly told Ms. Vartan that "his nerves were shot." After defense counsel's statement of Ms. Vartan's expected testimony, the state objected, contending that any testimony offered by Ms. Vartan relative to the mental situation of the victim was inadmissible. The trial judge sustained the state's objection (Assignment of Error No. 3). Defendant then proceeded to examine Ms. Vartan without inquiring into the mental condition of the victim.
Evidence of the victim's dangerous character or of his threats against the accused may be admissible in support of the accused's plea of self-defense, provided that the accused first produces evidence that the victim had made a hostile demonstration or overt act against the accused at the time of the incident. La.R.S. 15:482; State v. Lee, 331 So.2d 455 (La.1975). In Lee, this court held that once the overt act is established, evidence of the victim's dangerous character or of his threats against the accused is admissible in support of a plea of self-defense for two distinct purposes: (1) to show defendant's reasonable apprehension of danger which would justify his conduct; and (2) to help determine who was the aggressor in the conflict.
In order for evidence to be admissible to show defendant's reasonable apprehension of danger, it must be shown that defendant knew of the victim's prior acts of violence or reputation for violence at the time of the incident. State v. Bernard, 358 So.2d 1268 (La.1978); State v. Boss, 353 So.2d 241 (La.1978); State v. Lee, supra. On the other hand, if the evidence is to be introduced to help determine who was the aggressor in the conflict, evidence of general reputation, not evidence of specific acts or personal opinion, is admissible. State v. Bernard, supra; State v. Boss, supra. As explained in Boss, evidence introduced to prove a victim's character in order to corroborate a contention that he was the aggressor in the conflict must conform with the rule of La.R.S. 15:479 which provides: "Character, whether good or bad, depends upon the general reputation that a man has among his neighbors, not upon what particular persons think of him." Proof of character authorized by La.R.S. 15:479 consists of "the opinion (formed on hearsay it is true) by a member of the community exposed over an extended period of time to hearing the discussion (or lack of it) by other members of the community shared by himself and the person whose reputation is at issue." State v. Frentz, 354 So.2d 1007, 1011 (La.1978). In order to elicit positive statements concerning a victim's character, a foundation must first be laid demonstrating that the character witness is aware of the victim's reputation for character among his neighbors. State v. George, 346 So.2d 694 (La.1977).
In the instant case, defendant, in support of his plea of self-defense, presented appreciable evidence tending to establish a hostile demonstration or an overt act on the part of the victim which act or demonstration would create in the mind of a reasonable person a belief that he was in imminent danger of losing his life or of suffering great bodily harm.[2]State v. Simmons, 349 So.2d 273 (La.1977).
None of the evidence sought to be elicited from defendant or Ms. Vartan involved evidence of prior acts of violence committed by *1318 the victim. Rather, both defendant's and Ms. Vartan's offered testimony involved the history of the victim's mental problems or the change in the victim's "mood" after the automobile accident. Defense counsel made no effort to lay a foundation by demonstrating that either defendant or Ms. Vartan was aware of the victim's reputation among his neighbors for a history of mental problems or a change in "mood" after the automobile accident. It is apparent that the testimony sought to be elicited from defendant and Ms. Vartan was no more than their personal opinions as to the victim's purported mental problems.
Hence, the trial judge properly sustained the state's objections to the testimony of defendant and Ms. Vartan concerning the mental condition of the victim.
Assignments of Error Nos. 2 and 3 are without merit.

ASSIGNMENT OF ERROR NO. 27
Defendant contends the trial judge erred in sentencing him to five years at hard labor. He argues that the sentence imposed inflicts cruel, excessive, or unusual punishment in violation of La.Const. art. 1, § 20. Defendant also argues that the trial judge erred in failing to state adequately his reasons for imposition of the sentence as required by La.Code Crim.P. art. 894.1.
La.Const. art. 1, § 20 provides in pertinent part that "[n]o Law shall subject any person to euthanasia, to torture, or to cruel, excessive, or unusual punishment" (emphasis added). Some of the members of this court, including the author of this opinion, are of the view that this constitutional provision only gives to this court the judicial power to declare as unconstitutional laws which provide for excessive sentences rather than extending the judicial power to appellate review of sentences imposed in individual cases. Other members of the court interpret the provision as conferring upon this court constitutional authority to review sentences imposed in individual cases. State v. Progue, 350 So.2d 1181 (La. 1977).
We need not, however, resolve this issue in the present case for, under either interpretation of the constitutional provision, the sentence imposed here is not excessive. The maximum sentence for the crime of manslaughter is twenty-one years at hard labor. La.R.S. 14:31. Defendant's actions resulted in the loss of a human life. In view of the seriousness of this offense, we do not believe that imposition of the sentence of five years at hard labor was cruel, excessive, or unusual punishment.
Next, defendant contends the trial judge erred in failing to adequately state his reasons for imposition of the sentence as required by La.Code Crim.P. art. 894.1. That article states that where a defendant has been convicted of a felony or misdemeanor, the court should impose a sentence of imprisonment if one or more of the listed conditions are met. This statute also enumerates various grounds which, while not controlling the decision of the court, shall be accorded weight in its determination of suspension of sentence or probation. It is further provided that the "`court shall state for the record the considerations taken into account and the factual basis therefor in imposing sentence.'" State v. Gordon, 364 So.2d 1036, 1037 (La.1978); State v. Jackson, 360 So.2d 842 (La.1978); State v. Scarborough, 359 So.2d 982 (La.1978).
At the time the trial judge imposed the sentence of imprisonment on defendant, he stated that, while he was aware that defendant had no history of prior criminal conduct and had been greatly provoked, "it was not necessary in defense of his own life to kill Gregory Ridgedell [victim]." Therefore, he considered that a lesser sentence would deprecate the seriousness of defendant's crime. We conclude that the trial judge adequately complied with La.Code Crim.P. art. 894.1.
In sum, Assignment of Error No. 27 is without merit.

DECREE
For the reasons assigned, the conviction and sentence are affirmed.
*1319 TATE, J., dissents and assigns reasons.
CALOGERO, J., dissents for reasons assigned by TATE, J.
TATE, Justice, dissenting.
I respectfully dissent.
As the majority finds, the defendant, a store manager, was threatened by an overt act of a disgruntled employee he had discharged.
Over state objection, the defendant was not permitted to reply to his counsel's question if he was aware of any mental problems of the victimthe obvious purpose of the question being to show the defendant's reasonable apprehension of bodily harm because he knew of the mentally disturbed condition of the victim. Again, the victim's girl friend, called as a defense witness, was prevented by state objection from testifying as to the particularly disturbed mental condition of the victim on the day of the offense.
I do not read the jurisprudence, as does the majority, to hold that only the victim's prior acts of violence or reputation for violence are relevant to the accused's reasonable apprehension of bodily harm, as alone justifying a response to a threatening approach of the victim instanced by a hostile act. The primary reason for allowing nonreputation evidence is, not to show the victim's character, but rather the state of mind of the accused (his reasonable belief of his own danger). State v. Lee, 331 So.2d 455 (La.1975); Noted, 37 La.L.Rev. 1166 (1977).
As enunciated in State v. McMillian, 223 La. 96, 64 So.2d 856, 857 (1953), the non-reputation evidence (there, prior acts and disagreements between the parties) "was admissible and relevant to show the reasonableness of the defendant's fear of an impending attack or of suffering great bodily harm at the time of the homicide. It would have tended to negative intent and was thus relevant and admissible * * *." For the same reasons, the decedent's knowledge that the victim had acted irrationally in the past and was mentally disturbed should have been admissible to show the reasonableness of his picking up the pistol, whether or not it accidentally (as he claimed) discharged.
For these reasons, I believe that the trial court erred in sustaining the state objections so as to withhold this relevant evidence from the trial jury.
NOTES
[1] Defendant has neither briefed nor argued Assignments of Error Nos. 4 through 26, inclusive. Hence, we consider them to have been abandoned. State v. Blanton, 325 So.2d 586 (La.1976); State v. Carlisle, 315 So.2d 675 (La. 1975).
[2] Defendant testified that the victim pushed him several times and hit him in the right cheek immediately prior to the shooting. In addition, the evidence establishes that the victim grabbed the base of the telephone while defendant was attempting to telephone the owner of the tire mart. Defendant stated that he was afraid that the victim was preparing to hit him in the head with the base of the telephone and that he brought the pistol out from underneath the counter to "scare" the victim.