427 So.2d 1169 (1983)
STATE of Louisiana
v.
Roger Daniel BRYAN.
No. 82-KA-0435.
Supreme Court of Louisiana.
February 23, 1983.
*1170 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Tommy Adkins, Dist. Atty., Dan Grady, Asst. Dist. Atty., for plaintiff-appellee.
Paul Henry Kidd, Monroe, Ms. Ann Woolhandler, Michael G. Collins, New Orleans, for defendant-appellant.
MARCUS, Justice.
Roger Daniel Bryan was indicted by the grand jury for first degree murder of Deputy Sheriff Robert Taylor in violation of La.R.S. 14:30. At trial, the state offered evidence that defendant shot the deputy while defendant was forcibly resisting the deputy's efforts to effect a lawful arrest.[1] Defendant claimed that the fatal shooting was committed in self-defense. To rebut this evidence, the state presented the testimony of Sheriff Eugene Patterson for whom Taylor had worked as a deputy. The sheriff testified that during Taylor's five years with the department, he had never *1171 received any complaints about abuse or mistreatment by Taylor or about Taylor's excessive use of force in making an arrest. After trial, the jury found defendant guilty as charged. At a sentencing hearing, the same jury recommended a sentence of life imprisonment without benefit of probation, parole or suspension of sentence. Thereafter, the court sentenced defendant in accordance with the recommendation of the jury.
On appeal, defendant relied on forty-two assignments of error for reversal of his conviction and sentence. On original hearing, in a per curiam opinion, we found only one assignment of error merited written treatment, that is, that the trial judge erred in denying without a hearing defendant's motion for a new trial based on newly-discovered evidence. We remanded the case to the trial court for a hearing on the allegations of the motion for a new trial "relative to threats and misconduct" by Deputy Taylor. We further indicated that "diligence of counsel or lack thereof" should be considered by the trial court. The trial judge was directed to order a new trial if he found the "allegations material and their late presentation excusable." Absent an appeal from an adverse ruling, defendant's conviction and sentence were affirmed.[2]
On the state's application, we granted a rehearing to reconsider our action in remanding the case to the trial court for an evidentiary hearing on defendant's motion for a new trial. On rehearing, we reinstated our previous order.[3]
On remand, an evidentiary hearing was held at which defendant offered the testimony of several witnesses in an effort to show prior acts of violence by Deputy Taylor or that the deputy had a reputation for violence, to impeach the testimony of Sheriff Patterson concerning his denial of any knowledge of complaints against Deputy Taylor, and to show that defense counsel was not diligent in his representation of defendant. After a hearing, the trial judge denied defendant's motion for a new trial. Defendant appeals to this court from that ruling.
At the hearing, Earl Cox, a former FBI employee, testified that during his tenure with the FBI he had investigated a complaint letter in which it was alleged that Deputy Taylor had slapped a Patrick L. Algier while he was in jail. Cox testified that he had spoken with Sheriff Patterson about "an alleged incident of one of the officers" and he was "fairly certain" that it was the Algier incident. He could not recall informing Sheriff Patterson of the outcome or giving him a written report of the incident. A Mr. W.C. Algier[4] was present at the hearing but was not called to testify.
Pam Quarles testified concerning an incident that had arisen several years earlier when Deputy Taylor sought her help in locating two runaways. According to Quarles, she had taken her car to get the runaways for Deputy Taylor when she discovered that he was following her contrary to their agreement. During an altercation which ensued, Deputy Taylor put one hand against her chest, pushing her against her car, and his other hand around her neck, pushing her head back. When he released Quarles, he told her to get into the back seat of his vehicle.
Mrs. Dean Bennett testified that in dealing with Deputy Taylor about a simple burglary with which her own son and defendant had been charged, Taylor had reassured her he was her son's friend. However, she testified Deputy Taylor told her "he had been wanting to get [defendant] for a long time;" although he could not do so, he wanted "to beat him so bad [he didn't] know what to do;" and he suspected defendant of giving marijuana to some young people and would see that the grand jury prosecuted him. Mrs. Bennett further testified that she had complained to Sheriff *1172 Patterson about Deputy Taylor's delay in serving warrants on the simple burglary charges, and had made other complaints. She characterized herself as a "chronic" complainer.
Jean Bryan, defendant's mother, testified that Mrs. Bennett told her about both the Quarles incident and Taylor's threat against defendant and she transmitted this information to Bobby L. Culpepper, defendant's attorney, prior to trial. Mrs. Bryan also testified that, although she did not know of a problem between Deputy Taylor and a Patrick Algier, someone had told her there was a letter on file with the FBI and she had communicated this information to her son's attorney. Mrs. Bryan further stated that she had personally complained to Sheriff Patterson about Deputy Taylor because, without first going to defendant, the deputy had gone to defendant's employer and told him he was looking to arrest defendant. Reggie Bryan, defendant's father, testified that he had spoken to defendant's attorney about the Quarles incident as well as the other complaints testified to by his wife.
Sergeant Patterson, who at trial denied any knowledge of complaints against Deputy Taylor, testified again at the hearing and maintained that he had no memory of prior complaints, oral or written, and that the absence of the latter was confirmed by his records.
Mr. Culpepper, defendant's counsel, testified that he had spoken to defendant on several occasions prior to trial[5] and that on a number of occasions he had spoken with defendant's family from whom he obtained most of his information. According to Culpepper's testimony, he tried to contact and did subpoena those people defendant's family indicated may have knowledge of complaints against Deputy Taylor. However, he found that they either knew nothing or were not willing to testify and therefore decided not to call them as witnesses at trial. As appointed counsel, Mr. Culpepper had no funds with which to investigate the vague complaints.
Defendant testified that at the time he shot Deputy Taylor, he had no knowledge of "Taylor's brutality with anyone else" or that "Taylor was out to get him." Defendant described several incidents from his past contact with Deputy Taylor, showing that after a serious motorcycle accident, Taylor did not ticket him for not wearing a helmet; that he had not been prosecuted for a subsequent accident although "Taylor was there ... and they had several different charges they could've put on [him]"; that Taylor had warned him his name had been written on the top step of a firetower and the tower had been burglarized; and that Taylor had solicited his help as an informant.
A homicide is justifiable when committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger. La. R.S. 14:20(1). "A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense...." La. R.S. 14:21. The statute and jurisprudence require that an overt act be established before the dangerous-character and threat evidence concerning the decedent may be introduced. La.R.S. 15:482; State v. Lee, 331 So.2d 455 (La.1975).[6] Once the overt act is established, this type of evidence is admissible in support of a plea of self-defense in a murder prosecution for two distinct purposes: (1) to show defendant's reasonable apprehension of danger which would justify his conduct; and (2) to help determine who was the aggressor in the conflict. State v. Lee, supra. When the *1173 evidence is introduced for the first purpose (defendant's state of mind), it must be shown that defendant knew of the victim's prior threats or reputation for violence. State v. Bernard, 358 So.2d 1268 (La.1978); State v. Boss, 353 So.2d 241 (La.1977); State v. Lee, supra. On the other hand, when the evidence is introduced to prove that the victim was the aggressor, there is no requirement that the defendant have such knowledge. However, there still remains the general rule of evidence that character, whether good or bad, "depends upon the general reputation that a man has among his neighbors...." La.R.S. 15:479. Therefore, only evidence of general reputation, not evidence of specific acts, is admissible to establish the aggressor in the conflict. State v. Bernard, supra; State v. Boss, supra. Under La.R.S. 15:489, each side has a right to impeach the testimony and credibility of every witness sworn on behalf of the other side.
La.Code Crim.P. art. 851 dictates that the court, on motion of the defendant, shall grant a new trial whenever:
....
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;
....
This court has consistently held that the trial judge is accorded considerable discretion in evaluating the impact of newly-discovered evidence on the verdict and its reliability, and his ruling will be disturbed on appeal only where there is a clear showing of abuse of discretion. In considering a motion for a new trial based on newly-discovered evidence, the test to be employed is not simply whether another jury might bring in a different verdict, but whether the new evidence is so material that it ought to produce a different result than the verdict reached. State v. Williams, 362 So.2d 530 (La.1978).
The only evidence of prior acts of violence by Deputy Taylor was the Algier and the Quarles incidents and the testimony of Mrs. Dean Bennett concerning the threat against defendant. However, this evidence would not have been admissible at trial to show defendant's state of mind because defendant did not know of these incidents at the time of the homicide. No evidence was introduced to show that Deputy Taylor had a general reputation for violence. Moreover, the only evidence offered to impeach the testimony of Sheriff Patterson was the testimony of Earl Cox that he may have orally informed Patterson about the complaint that Deputy Taylor had slapped Patrick Algier while he was in jail. The complaints of Mrs. Dean Bennett and defendant's mother did not relate to claims of abuse or mistreatment. Clearly, this evidence would not have been sufficient to impeach the testimony of Sheriff Patterson. Additionally, either defendant's attorney or defendant's family was aware, prior to trial, of the above complaints against Deputy Taylor, and defendant's attorney tried to contact and subpoena anyone he thought might have knowledge of such complaints but found that the people either knew nothing or were not willing to testify.
Hence, we conclude, as did the trial judge, that all the evidence adduced at the hearing on remand could have been obtained with due diligence prior to trial; however, the lack of diligence was not caused by the neglect of defense counsel. Even if the evidence could not have been obtained with due diligence, none of it was so material that it would have produced a different result than the verdict reached. Thus, the trial judge did not abuse his discretion in denying defendant's motion for a new trial. Having previously found no merit to the remaining assignments of error raised in his first appeal to this court, we affirm defendant's conviction and sentence.

DECREE
For the reasons assigned, defendant's conviction and sentence are affirmed.
LEMMON, J., concurs.
NOTES
[1] Defendant was being arrested for failure to post additional bond on a prior charge of simple burglary.
[2] State v. Bryan, 398 So.2d 1019 (La.1981).
[3] State v. Bryan, 398 So.2d 1021 (La.1981) (on rehearing).
[4] Cox testified that he had talked to Patrick L. Algier's father at least by telephone after receiving the complaint. The record does not clarify W.C. Algier's relationship to Patrick L. Algier.
[5] Defendant testified that he had seen Mr. Culpepper on three occasions: first, for five to ten minutes before and during the preliminary examination; second, to discuss a plea bargain to manslaughter; finally, for five to ten minutes before trial. He also stated that he called Mr. Culpepper several times and in response Mr. Culpepper had sent an attorney who was working with him.
[6] On rehearing, the original opinion was reinstated. State v. Lee, 331 So.2d 463 (La.1976) (on rehearing).