400 So.2d 1063 (1981)
STATE of Louisiana
v.
Charles E. MARTIN aka Christopher Antonio Martin.
No. 67519.
Supreme Court of Louisiana.
March 2, 1981.
On Rehearing July 2, 1981.
*1064 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Paul Carmouche, Dist. Atty., Rober W. Gillespie, Jr., B. Woodrow Nesbitt, Dale G. Cox, Asst. Dist. Attys., for plaintiff-appellee.
Frank E. Brown, Jr., Piper & Brown, Shreveport, for defendant-appellant.
STOKER, Justice Ad Hoc.[*]
The bill of information in this matter charged the defendant on May 16, 1979, with attempted first degree murder, as set forth in LSA-R.S. 14:27 and 14:30. On November 9, 1979, a jury of twelve found the defendant guilty by a vote of ten to two. On January 21, 1980, the defendant was sentenced as a second felony offender under LSA-R.S. 15:529.1 to serve seventy-five years at hard labor. The defendant appeals the conviction and sentence.
The offense was committed on April 17, 1979, in Caddo Parish, Louisiana. On that date an unidentified black male approached the victim, Donald Browne, a Louisiana State Police trooper who was off-duty and out-of-uniform. The unidentified person offered to sell to Browne various household items, furniture and guns. The trooper testified at trial that he thought the stranger might be involved in a stolen property ring, and he decided to play along with the stranger in order to make an arrest.
The suspect was accompanied by two other black males who remained seated in a brown Mercury. The man who had approached Browne got into Browne's pick-up truck with him, and they went to a bank to withdraw money to "buy" the goods. The men in the brown Mercury followed. Browne withdrew $150.00 and then drove with the passenger to an apartment complex indicated as the planned site of the sale. Browne gave the money to the man in his truck. After a moment the man ran and jumped into the brown Mercury. The vehicle sped off. Trooper Browne, suspecting that he was the object of a swindle scheme, pursued the men in the brown Mercury. The pursuit lasted several miles at high speed and with reckless driving. At one point, the man who approached Trooper Browne jumped from the Mercury as it slowed and fled on foot. Browne continued to pursue the Mercury and the remaining occupants. The vehicle abruptly stopped on a street in an all-Black residential area. Browne pulled up behind the stopped car. Browne testified at trial that he left his truck and identified himself as a State Police officer and that he yelled to the two occupants of the car that they were under arrest. Browne reached into the open door *1065 of the car, again identifying himself and attempting physically to arrest the suspects. There was a quick scuffle, and the driver fired a shot which hit Trooper Browne. The victim was unable to identify his assailant or the other passenger. Eyewitnesses to the shooting also were unable to identify either of them. The two assailants fled from the scene leaving Trooper Browne on the street paralyzed from the chest down by the bullet lodged in his spine.
Within a short time a very large contingent of police arrived at the scene of the shooting. A large crowd of area residents gathered to protest the police action. At this same time the police were pursuing a lead that directed them to the nearby residence of Ms. Ballastine Porter. Ms. Porter denied permission to police investigators to enter her house to search for the suspects and told the investigators the house was empty. Despite her refusal to consent, the police entered her residence after hearing loud noises which they believed sounded like someone running and crashing about. The entry into Ms. Porter's residence took place after about a thirty minute fruitless effort to secure a warrant. During that time the crowd continued to grow and become unruly. Two bystanders were arrested after a confrontation with the police. Upon entering Ms. Porter's residence, the police noticed large holes in the ceiling and entered the attic and found the defendant hiding there. The defendant was arrested, advised of his rights and transported to headquarters. After the arrest the Porter residence was searched without a warrant. As a result of the search a pistol was found. It was later determined that Trooper Browne was shot with this pistol.
Defendant make inculpatory statements in which he admitted that he had in fact shot Trooper Browne and that he was the driver of the brown Mercury. The defendant later sought to suppress these statements. At the trial defendant admitted the shooting but attempted to label it as self defense or as accidental.
The defendant assigns numerous errors.

ASSIGNMENT OF ERROR NUMBER 1
By this assignment defendant asserts that the record is replete with patent errors. He asks the court to review the record to discover them. A review of the record discloses no errors which have not been made the subject of specific assignments of error by the defendant.
Assignment of error number one is without merit.

ASSIGNMENTS OF ERROR NUMBERS 2 AND 3
In these two assignments of error the defendant asserts that the trial court erred in failing to comply with the sentencing guidelines of LSA-C.Cr.P. art. 894.1 and imposing an excessive sentence. In view of the fact that we find other errors which require that this case be remanded for a new trial we pretermit discussion of these two assignments.

ASSIGNMENTS OF ERROR NUMBERS 4, 5, AND 17
In these assignments the defendant urges that there was error in three instances of impermissible conduct in the course of the State's closing argument. In view of our remand we pretermit consideration of these assignments.

ASSIGNMENT OF ERROR NUMBER 6
By this assignment the defendant asserts that there was error in the State's exercise of peremptory challenges in a racially discriminatory manner so as to systematically exclude Blacks from the petit jury and thus deny him a fair trial by a representative cross-section of the community. An examination of the record does not indicate any merit to this assignment.

ASSIGNMENT OF ERROR NUMBER 7
By this assignment the defendant asserts that there was error in the trial court's failure to grant a mistrial. Defendant's motion for mistrial was based on what defendant asserts was an inflammatory and prejudicial remark made during the State's *1066 opening statement. This assignment has no merit.

ASSIGNMENT OF ERROR NUMBER 8
By this assignment defendant asserts that the trial court erred when it allowed the prosecution to present a video tape of his arrest to the jury in open court. Defendant asserts that the contents of this tape were not relevant and that the playing of the tape was prejudicial.
The exhibit consisted of approximately forty-five minutes of video tape of the scene of defendant's arrest as filmed by a local television news station. In addition to showing police officers taking the defendant into custody and the vehicles used during the crime, the film purports to contain a substantial amount of the reaction, comments and actions of a crowd of Blacks that gathered to protest, and at times interfere with the arrest of the defendant. The defense stipulated that the film accurately depicted the scene where the vehicles were found and where the defendant was arrested. In this assignment of error defendant asserts that the rest of the tape was irrelevant and prejudicial since it showed the crowd's occasionally violent confrontation with the arresting officers. The trial judge ruled that the evidence was admissible, determining it to be relevant and no more damaging than the oral testimony of a witness and still photographs. The tape was thus admitted into evidence and shown to the jury in open court.
Counsel for defendant objected vigorously to the admission of the video tape on the ground that it is not relevant and that everything the State wished to show was either already admitted or could be easily shown by other evidence. Out of the presence of the jury and prior to presentation of any evidence the trial court heard arguments on the admissibility of the tape. Tr. Vol. 3, pp. 124-135. Counsel were given full opportunity to voice their arguments as to the admissibility of the tape. At no time did the defense ever assert that the video tape was prejudicial. The court's ruling, elaborated on at some length, referred only to the relevancy of the material shown by the tape. We are of the opinion that a serious question would be presented by this assignment if objection had been made that the matter to be shown was prejudicial. What was shown to the jury was relevant but the defense was correct that the relevant parts were either admitted by the defendant or could be established by other evidence. However, inasmuch as defendant only objected to the relevancy of the material and did not bring before the court the possible prejudical nature of the matter depicted in the tape, the trial court was not called upon to rule on the possibility that, although relevant, the prejudicial effect of the matter shown might outweigh its relevancy. Even if evidence is relevant, in a given case counter balancing factors may exist which should lead a court to exclude the evidence. These factors include the danger that the evidence may unduly arouse the jury's emotions of prejudice, hostility, or sympathy or create a collateral issue which would distract the jury. State v. Franklin, 353 So.2d 1315 (La. 1978).

ASSIGNMENT OF ERROR NUMBER 9
By this assignment defendant asserts that the trial court erred in admitting hearsay evidence. The admission of the testimony in question occurred during the direct examination of the victim, Donald Browne.
The testimony the defendant objected to was as follows:
"Q Once you arrived at this parking lot, can you tell me what happened then?
A When we arrived there at the parking lot, the black guy that was in the truck with me, well, he said he, you know, needed the money." (Tr. Vol. IV, p. 14)
This testimony was elicited in the context of the victim's description of his participation in an apparent swindling operation that the defendant and two others were trying to perpetrate on the victim.
The State urges that the statement is admissible as part of the res gestae, a well *1067 recognized exception to the hearsay rule. What forms any part of the res gestae is always admissible in evidence. LSA-R.S. 15:447. The res gestae exception allows the admission of testimony concerning utterances made during, before or after a crime. "To constitute res gestae the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction." LSA-R.S. 15:448.
The statement made to the victim occurred immediately before the chase that ended in the victim's shooting and may be seen as having been made during the excitement and pressure of a crime that provides such a statement with special reliability. State v. Millet, 356 So.2d 1380 (La. 1978). The elapsed time between the shooting and this statement, however, was appreciable. Yet, the victim's testimony was important in establishing the attempted swindle and the reason for the victim's pursuit of the defendant and his confederates. The State contends that these events and the shooting can be seen as one continuous transaction. As there was no break in the chain of events between the swindle and the shooting, the statements are admissible as part of the res gestae.
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER 10
By this assignment defendant contends that the trial court erred when it denied defendant the right to cross examine and impeach the victim.
In support of a claim of self defense, the defendant attempted to impeach the victim's testimony at the trial by showing him to be short-tempered and violent. Defendant sought to demonstrate that, not only was he suddenly approached by an obviously angry stranger, but more importantly, the victim had a reputation for violent behavior. Defendant hoped to establish this tendency for violent behavior by introducing evidence of a pending suit in which the victim's alleged aggressive tendencies were at issue. Out of the presence of the jury, defendant was able to assert no more than that there was a civil suit pending against the defendant in the Tenth Judicial District for assault and battery. The trial judge determined that this line of questioning was improper and would be admissible only if a judgment had been rendered.
When the credibility of a witness is attacked, the inquiry must be limited to general reputation. The inquiry cannot go into particular acts, vices or courses of conduct. LSA-R.S. 15:491; State v. Marshall, 359 So.2d 78 (La. 1978); State v. Banks, 307 So.2d 594 (La. 1975). While this rule does permit an attack on the witness insofar as his credibility in the case on trial is concerned, proof of one's bad moral character as sought to be proved in the instant case must be confined to reputation. General reputation is established by witnesses who know the person whose reputation is in question, know the community in which the individual lives, and who actually know the reputation the individual enjoys in that community. As an exception to the general rule, evidence of the victim's dangerous character may be admissible in support of an accused's plea of self-defense, provided that the accused first produces evidence that the victim made a hostile demonstration or overt act against the accused at the time of the incident. State v. Gomez, 365 So.2d 1313 (La. 1978); LSA-R.S. 15:482. In the instant case no such proof was adduced before the defendant attempted to attack the victim's credibility.
In order for evidence to be admissible to show defendant's reasonable apprehension of danger, it must be shown that defendant knew of the victim's prior acts of violence or reputation for violence at the time of the incident. State v. Bernard, 358 So.2d 1268 (La. 1978); State v. Boss, 353 So.2d 241 (La. 1977); State v. Lee, 331 So.2d 455 (La. 1975).
Therefore, the evidence was inadmissible and thus properly refused.
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER 11
By this assignment defendant asserts that the trial court erred in allowing the *1068 State to elicit testimony in regard to a shooting that occurred six months earlier. The defendant was in no way connected with the earlier shooting. Defendant contends that the witness' testimony was irrelevant and prejudicial.
At trial the State called Officer R. G. Hornsby who was responsible for transporting the defendant from the scene of his arrest to police headquarters. On cross-examination this witness testified that as the defendant was driven to the station, the witness faced the defendant, who was in the back seat with another arrestee, and kept his service revolver trained on him, with his finger on the trigger. The defense attempted to elicit testimony that would establish that the defendant had been coerced and intimidated by this and other actions of the officer. On redirect examination, the prosecutor asked Officer Hornsby why he held the gun on the victim. The witness responded:
"Because I hadn't searched him. Sergeant Jourdan hadn't searched him. We were in a car with him, and around five or six months earlier we had a" (Tr., Vol. IV, p. 157).
The defense objected to any further response, urging that the witness had already adequately answered and that anything further would concern irrelevant matters. The objection was overruled and the questioning continued. The witness stated that five or six months earlier an officer had been shot and killed by a suspect who was riding handcuffed in the back of the squad car, but who apparently concealed a weapon that had not been detected in a search. The witness further asserted that keeping the revolver aimed at the defendant was done for protection not intimidation.
Defendant asserts that any testimony regarding the earlier shooting incident was irrelevant to the charged offense and that its erroneous introduction served only to prejudice him. Relevancy is governed by LSA-R.S. 15:441 which provides:
"Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent.
"Facts necessary to be known to explain a relevant fact, or which support an inference raised by such fact, are admissible."
A trial judge's ruling concerning the relevancy of evidence will not be disturbed on appeal in the absence of a showing of a clear abuse of discretion. State v. Alford, 384 So.2d 761 (La. 1980); State v. Echols, 376 So.2d 1244 (La. 1979); State v. Weems, 358 So.2d 285 (La. 1978); State v. Winston, 343 So.2d 171 (La. 1977). Even evidence deemed relevant is excluded if it would unduly arouse jury prejudice or hostility. State v. Franklin, 353 So.2d 1315 (La. 1977). The testimony to which defendant objects was adduced to explain the statements elicited from Officer Hornsby on cross-examination and to blunt the inference of intimidation raised by the defense. Under the circumstances the testimony was relevant. No doubt there was the potential for a prejudicial impact on the jury through raising the recent and apparently notorious killing of the other officer. Despite this potential, the remark was unlikely to have impaired the jury's ability to reach an independent conclusion as to the defendant's guilt, inasmuch as there was no indication that defendant was involved in the earlier incident. The admission of this testimony was not error. Even if the testimony is considered irrelevant, it did not have a compelling prejudicial impact, and was at most harmless error.
This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER 13
By this assignment the defendant contends that the trial court erred when it permitted the State to cross-examine him extensively on details of a prior conviction.
Defendant took the stand to relate his version of the facts. Defendant admitted his prior conviction for possession of narcotics in California. On cross-examination the State questioned the defendant in regard to this conviction. Defendant was questioned at length regarding his guilty plea, his representation by counsel, his sentence and *1069 probation and the dismissal of two counts of the three count indictment against him. During the questioning the defense objected and moved for a mistrial asserting that the line of questioning was prejudicial and inflammatory. Defendant's objection was overruled.[1]
In State v. Jackson, 307 So.2d 604 (La. 1975) this Court held that the prosecution, in impeaching the credibility of a defense witness, may not only establish prior convictions of the witness, but may also question the witness in regard to the details of the conviction in order to show the true nature of the offense. The Jackson holding has been repeatedly determined to extend to defendants testifying in their own behalf. State v. Brown, 371 So.2d 751 (La. 1979); State v. Sykes, 364 So.2d 1293 (La. 1978); State v. Thompson, 364 So.2d 908 (La. 1978); State v. Carter, 363 So.2d 893 (La. 1978); State v. Dupar, 353 So.2d 272 (La. 1977); State v. Elam, 312 So.2d 318 (La. 1975).
In State v. Brown, supra, at 750, this Court stated that "... a Jackson cross-examination is not without its limits." The Court reasoned that the extent of a permissible inquiry is to be governed by the facts of the particular case. The trial judge has great discretion in determining the depth and length of the Jackson inquiry and this determination will be disturbed only upon a clear showing of abuse of discretion.
In State v. Oliver, 387 So.2d 1154 (La. 1980) this Court noted the severe criticism that has been directed to Jackson and again asserted that Jackson does have limits. The Court stated that "The trial court has the duty of restricting an inquiry into details of a past conviction within reasonable bounds." In finding that the prosecutor had surpassed the limits of Jackson in State v. Oliver, supra, the Court focused on the prosecutor's violation of LSA-R.S. 15:491 and 15:494, the use of an accusation made against the defendant rather than a conviction, and the extreme prejudice that resulted from the prosecutor's remarks. In Oliver, there was no evidence that the defendant had been charged or convicted of a prior offense. While the circumstances in the instant case are not as egregious as those of Oliver, what we said there applies here, namely that "Jackson must be narrowly, rather than broadly construed, and care must be taken to avoid prejudice to the rights of the accused by expansive reference to details of a former conviction."
The limitations on Jackson have little applicability to that portion of the questioning in the instant case which dealt with the conviction which was corroborated by a copy of defendant's record from San Diego County. However, Jackson does affect the questioning in regard to those counts of the indictment dropped when defendant pleaded guilty. This inquiry is also governed by LSA-R.S. 15:495 which prohibits the use of evidence of an indictment for the purpose of impeaching the credibility of a witness. Additionally, the prosecutor's questions in regard to defendant's probation are outside the scope of Jackson.
In State v. Johnson, 368 So.2d 719 (La. 1979) this Court held that questioning in regard to defendant's probation was an impermissible extension of the Court's jurisprudential rule allowing impeachment of a witness' credibility through cross-examination as to the details of prior convictions. Inquiry into an accused's probation was determined to go too far afield from legitimate questioning about the facts bearing on a witness's credibility.
In the instant case the State was permitted to question the defendant at length concerning the probation which was imposed in connection with the sentence defendant received as a result of his plea of guilty. Conceivably, this questioning may have been no more prejudicial than the information concerning the conviction resulting from this plea. In State v. Johnson, *1070 supra, the court found under similar circumstances that the trial court did not commit reversible error; however, the questioning concerning the charges that were dropped was a violation of LSA-R.S. 15:495. This requires a reversal and remand of this case for new trial.

ASSIGNMENT OF ERROR NUMBER 14
By this assignment the defendant asserts that the trial court erred when it permitted the State to elicit testimony from defendant's physician in contravention of the physician-patient privilege of LSA-R.S. 15:476.
Dr. Raymond Rosenkrans was called as a State witness for the purpose of rebuttal immediately after the defendant testified. The defendant testified in regard to his medical condition on direct examination.
In his rebuttal testimony, Dr. Rosenkrans, the general surgeon on the surgery team that admitted the defendant for examination at Confederate Hospital in Shreveport, testified concerning the accused's condition. Defendant asserted that this testimony was elicited over his objection in violation of LSA-R.S. 15:476 which prohibits a physician from disclosing any communication, result, opinion or information obtained from a patient, unless the patient expressly waives that privilege. The statute exempts physicians appointed by the court to investigate a patient's physical and mental health and permits cross-examination of any physician upon the correctness of any certificate issued by him.
Defendant in the instant case voluntarily consulted Dr. Rosenkrans for diagnosis and treatment. In State v. Aucoin, 362 So.2d 503 (La. 1978) this Court in approving the introduction of a psychiatrist's testimony in regard to his patient, determined that when the accused tenders his health as an issue he waives the privilege of LSA-R.S. 15:476 to such information as is genuinely relevant to the narrow issue tendered. Here, the defendant put his physical condition at issue and the State, on rebuttal, sought not to pry into the private details of the patient's life but to contradict assertions made by the defendant in regard to that physical condition.
This assignment of error is without merit.

ASSIGNMENTS OF ERROR NUMBERS 12 AND 15
By these assignments the defendant contends that the trial court erred in admitting two State exhibits into evidence and in denying defendant's motion to suppress. The exhibits defendant seeks to have suppressed are his inculpatory statements and the pistol used in the shooting, which was seized from the residence where defendant was arrested.
The Inculpatory Statement
The facts of defendant's arrest and the taking of his inculpatory statements were developed at a hearing on a motion to suppress and at trial on the merits as follows. The police that were dispatched to the scene of the shooting of Officer Browne were apparently informed that a suspect was believed to be in the residence of Ms. Ballastine Porter, approximately a block from the scene of the shooting. The record is devoid of any testimony as to this alleged tip. The State apparently failed to elicit testimony as to who gave the police this information or to whom it was given. No informant was named or testified. Officer T. A. Brown testified that before the residence was entered, Ms. Porter denied the police permission to enter and insisted that there was no one inside. The witness further testified that as he stood outside the residence he heard loud noises emanating from within the house. At the scene of the arrest, there was apparently much confusion due to the behavior of a large crowd that had gathered to protest the police presence in the predominantly Black neighborhood.
The police waited approximately thirty minutes while efforts were made to secure a warrant but then decided to enter without the warrant. Several police officers entered the residence and began looking for the defendant. Officers Brown, Harold Lawson and Bobby Jones entered the attic of the dwelling, found the defendant, scuffled briefly with him, handcuffed him, read *1071 him his rights and handed him down to other officers. Officer Brown testified that at no time was the defendant beaten, kicked, cursed, or assaulted. This testimony was corroborated by Officers Lawson and Bobby Jones were also testified at the motion to suppress.
The defendant was placed in a police vehicle and transported to headquarters. Two officers were in the police vehicle, Officer W. F. Jourdan, who was driving, and Officer R. G. Hornsby who rode in the car. Officer Jourdan testified that the defendant was not abused, threatened, coerced, or intimidated and that the defendant was read his Miranda rights in the vehicle. Officer Hornsby testified that he read the defendant his rights in the vehicle and advised the defendant of those rights again at the station. Officer Hornsby also stated that the victim was not struck, abused, or threatened, but that he did keep his service revolver trained on the defendant during the nine minute ride to headquarters. The officer sought to justify the aiming of the gun at the defendant by explaining that an officer had recently been killed by a handcuffed suspect being transported in a police vehicle, that he had not personally searched this defendant and that he thus felt a need to protect himself. Officer Hornsby testified that while two prior complaints of unreasonable force had been made against him, he did not improperly handle this defendant other than by keeping his pistol aimed at the defendant.
Officer Steve Franklin testified that when the defendant arrived at the station he was placed in his custody, that he was not the subject of any coercion and that he personally advised the accused of his rights. Like the officers who testified previously, this witness did not recall that the defendant appeared to be injured in any significant manner. The next State witness, Detective Donnie G. Nichols, testified that he noticed the defendant holding his elbow and asked him what happened. Defendant responded that he had fallen while in the attic and injured himself but he would prefer to make a statement before being treated. This witness also testified that he was present when the defendant made the inculpatory statements and when he signed these statements three days later (immediately after being again advised of his Miranda rights). Detective Nichols testified that the statements were given to him on the day of the arrest and that shortly after his arrival at headquarters the defendant further cooperated by giving the names of other individuals involved and identifying one of these from a photographic line-up. Each police officer and detective called insisted that the defendant was not abused and was able to rebut specifically any alleged abuse. They also testified that the defendant was not suffering from any serious injury and that he did not request any medical attention. Defendant, however, was hospitalized after his arrest and treated for an apparent mild concussion. The defense asserts that this was the result of police abuse. The State argues that the defendant was not abused and suggests that some injury to the defendant may have occurred in the darkened attic when he was arrested or that defendant was injured when he fell through the sheetrock of the ceiling of the Porter residence as he tried to hide in the attic.
The defendant testified at the hearing on the motion to suppress and asserted his own version of the facts. The defendant insisted that he was beaten in the attic at the time of his arrest and that he was struck in the face by Officer Hornsby with a pistol when at police headquarters. As noted earlier, in defendant's inculpatory statement he asserted that while attempting to hide in the attic he had fallen through the sheetrock to the floor. At the hearing on the motion to suppress he said he was mistaken and that he had stepped through the sheetrock but had not fallen to the floor.
Before a confession can be introduced in evidence, the State has the burden of affirmatively proving that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, promises or inducements. LSA-C. Cr.P. art. 703(C); LSA-R.S. 15:451; State v. Castillo, 389 So.2d 1307 (La. 1980). It is *1072 also necessary that the State establish that the defendant who makes an inculpatory statement during a custodial interrogation has been given his Miranda rights. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The admissibility of a confession is in the first instance a question for the trial judge. His conclusions on the credibility and weight of the testimony relating to the voluntariness of a confession will not be overturned unless they are not supported by the evidence. State v. Castillo, supra; State v. Jones, 386 So.2d 1363 (La. 1980); State v. Hutto, 349 So.2d 318 (La. 1977).
In the instant case the prosecution submitted testimony that the defendant was not deliberately abused or beaten. In State v. Simmons, 328 So.2d 149 (La. 1976) this Court reaffirmed its earlier observation in State v. Monroe, 305 So.2d 902, 912 (La. 1974) that "... the State is required to rebut specific testimony introduced on behalf of the defendant concerning factual circumstances which indicates coercive measures or intimidation; it cannot simply rely on general testimony of officers not present that they witnessed no coercion, intimidation or other undue influence." Further, in State v. Hills, 354 So.2d 186 (La. 1977), this Court determined that when the police officers' testimony is sufficiently detailed, it may serve to rebut in advance defendant's subsequent claims from the stand. The testimony that was introduced in the instant case was not merely a general denial of alleged mistreatment but consisted instead of more direct rebuttals to specific allegations of abuse. Further, although the officers preceded the defendant to the stand, under State v. Hills, supra, their testimony denying any abuse is a sufficient rebuttal of the defendant's charges.
The record of the hearing on the motion to suppress thus contains ample testimony supporting the State's assertion and the trial court's conclusion that the defendant had been advised of his rights, that his statement was free and voluntary and that the defendant's will was not overcome by any police mistreatment. Having observed the witnesses, the defendant, and having weighed the evidence, including the testimony regarding the aiming of the pistol at the defendant, and the repeated advising of Miranda rights, the trial judge did not abuse his discretion in admitting this confession.
The Search and Seizure
By these statements the defendant also asserts that the pistol which was seized from the Porter residence without a warrant was the product of an unlawful search and seizure under the Fourth Amendment of the United States Constitution and Article I, § 5 of the Louisiana Constitution of 1974. In such a case the burden is on the State to show that the search was justified by some exception to the warrant requirement; Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); State v. Pomes, 376 So.2d 133 (La. 1979); State v. Matthews, 366 So.2d 1348 (La. 1978); State v. Franklin, 353 So.2d 1315 (La. 1977). Furthermore, the United States Supreme Court in Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) determined that a basic principle of the Fourth Amendment is that searches and seizures inside the home without a warrant are presumptively unreasonable. See also, State v. Brown, 387 So.2d 567 (La. 1980). While the home searched in Payton was the defendant's home, the language of that decision does not appear to limit it to only that particular fact situation. Further, the defendant here has standing to assert the illegality of the search under Article I, § 5 of the Louisiana Constitution despite the lack of proprietary interest in the place searched. State v. Green, 376 So.2d 1249 (La. 1979). In State v. Thomas, 349 So.2d 270, 272 (La. 1977) this Court set forth the principles applicable to warrantless arrests:
"A warrantless arrest, no less than an arrest pursuant to a validly issued warrant, must be based on probable cause. State v. Ranker, 343 So.2d 189 (La.1977); State v. Jackson, 337 So.2d 508 (La.1976); State v. Scott, 320 So.2d 538 (La.1975); State v. Terracina, 309 So.2d 271 (La. 1975); State v. Odom, 292 So.2d 189 (La. *1073 1974). Probable cause exists when facts and circumstances within the arresting officer's knowledge and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); State v. Marks, 337 So.2d 1177 (La.1976); State v. Randolph, 337 So.2d 498 (La.1976); State v. Gilmore, 323 So.2d 459 (La.1975); State v. Wood, 262 La. 259, 263 So.2d 28 (1972). While the officer need not have sufficient proof to convict, mere suspicion is not enough to justify an arrest. State v. Ranker, supra; State v. Randolph, supra."
The record of the motion to suppress and the trial on the merits both fail to reveal how the officers came to know the whereabouts of the defendant or what made them suspect that he was in the Porter residence. Officer Harold Lawson asserted that information led the police to believe that he was in that house; the defense brief also asserts that an informant told police that the defendant was there. There was nothing further either at the motion to suppress or at the trial on the merits to explain or elaborate on this assertion. No informant was named or testified. The record merely reveals that the police went to the Porter residence and were refused admittance. Ms. Porter declared that the officers would have to produce a search warrant and that there was no one inside. Officers standing outside the residence heard a commotion inside and what sounded like someone running about. Hearing these noises and having been told by Ms. Porter that the house was empty, the officers decided to obtain a warrant to search the house. After a thirty minute wait while efforts were made to secure a search warrant the police entered the Porter residence. The police and the State justified the decision to enter without a warrant on the mounting problem of controlling a growing and hostile crowd.
In view of Ms. Porter's statement that her house was empty and the hearing of noises in the house indicating this was not true, the investigating officers had probable cause to suspect that the Porter residence was the defendant's hideout. Therefore, there is no necessity for a remand on the motion to suppress for the purpose of ascertaining the basis on which the officers focused on Ms. Porter's residence. Having determined that there was probable cause to enter and arrest the defendant, we will now consider the validity of the seizure of the pistol found in the search of the house after defendant's arrest.
The seized weapon was found wrapped in a shirt under a dresser in a bedroom of the house. The search and seizure was not justifiable as a search incident to a lawful arrest as recognized in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); State v. Rawls, 376 So.2d 117 (La. 1979). At the time of the seizure the defendant was handcuffed, in custody, and on his way to police headquarters.
The search was not justifiable under the plain view exception to the warrant requirement. The pistol was not discovered inadvertently but rather as part of a deliberate house-wide search. It could not have been immediately apparent that the seized weapon was evidence or contraband since the testimony of the officers indicated that it was hidden under a dresser and completely concealed in a shirt. State v. Edsall, 385 So.2d 207 (La.1980); State v. Brown, 370 So.2d 525 (La.1979).
As justification for the seizure the State urges that the record reveals that the owner of the residence was sympathetic to the defendant because she had already attempted to aid him and therefore having already aided him, failure to seize the evidence immediately might have resulted in its destruction or its removal. The evidence as to a growing number of hostile Black residents evidences serious doubt that the premises could have been secured while a warrant was obtained. The large unruly crowd presented exigent circumstances. This exigency was pressed as a justification at the hearing on the motion to suppress. The State asserted that the police feared action *1074 by the hostile crowd and thus, after consulting with the district attorney's office, determined that it was necessary to execute a search for the weapon as quickly as possible and then depart without further antagonizing the growing crowd. In Mincey v. Arizona, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) the United States Supreme Court determined that, while there is no "murder scene" exception to the warrant requirement, exigent circumstances that would justify an immediate warrantless seizure exist when there is an indication that evidence will be lost, destroyed, or removed during the time required to obtain a search warrant. In the instant case the police realized that the securing of a warrant might have taken hours and determined that, with the crowd pressing forward and altercations between citizens and the police erupting, an immediate search and a prompt departure was necessary to defuse the increasingly volatile situation.
In our opinion exigent circumstances did exist which justified the warrantless search of the Porter premises and the seizure of the pistol.
Assignments of error numbers twelve and fifteen are without merit.

ASSIGNMENT OF ERROR NUMBER 18
In this assignment the defendant contends that the trial court erred in adjudging him a second offender. After the defendant was found guilty in this case of attempted first degree murder the State filed a second offender bill of information. The court found defendant guilty of being a second offender. Numerous issues are brought up by this assignment of error. These issues become moot in view of our finding that defendant's conviction and sentence must be set aside and the case remanded for a new trial.

ASSIGNMENT OF ERROR NUMBER 16
Through this assignment of error the defendant asserts the trial court erred in denying his motion for a new trial. The points on which defendant contends he is entitled to a new trial concern events which occurred at the first trial and questions of sufficiency of evidence. As a new trial will be ordered, the same issues may not arise in the new trial. Hence, we will not take up these issues.

DECREE
For the foregoing reasons stated in assignment of error number thirteen, the defendant's conviction and sentence are vacated, and the matter is remanded for a new trial.
REVERSED AND REMANDED.
CALOGERO, J., concurs.

ON REHEARING
DENNIS, Justice.
A rehearing was granted to consider whether defendant's conviction should be reversed on Assignment of Error Number 13 because the prosecuting attorney asked the defendant on cross-examination whether he had been indicted for two offenses of which he had not been convicted. After reargument of the issue and careful consideration of the defendant's testimony, we conclude that the record demonstrates defendant was questioned only about offenses of which he was convicted.
The defendant took the witness stand in his own behalf and gave testimony indicating that the shooting occurred accidentally during his justifiable use of force for the purpose of preventing a forcible offense against his person. During direct examination by his own attorney, defendant testified:
"Q. Have you ever been convicted of any type of crime before, Mr. Martin?
A. In '72, sir.
* * * * * *
Q. In what state was that?
A. California?
Q. O.K., and what was that offense?
A. Possession and sales.
Q. Of what?
A. Narcotics."
*1075 On cross-examination, the prosecuting attorney began to ask the defendant about two counts of the indictment which he believed had been dismissed:
"Q. And after the state dismissed the first two counts, you * * *."
The question was interrupted by defense counsel's objection. The jurors were excused and the matter was argued and ruled upon outside their presence. The trial judge overruled the objection on the grounds that the state may cross-examine a witness on any dismissed count of an indictment under which he has been convicted as proper inquiry into the facts and circumstances of his conviction.
After the jury returned, the prosecuting attorney asked the defendant if it were true that he pleaded guilty to possession of controlled substances for sale under one count of the indictment and that the prosecution dismissed two other counts. The prosecuting attorney referred to a document which purportedly reflected defendant's California conviction record. However, the document was never exhibited to the jury. The defendant answered that he had pleaded guilty to all three counts of the indictment and was sentenced for three convictions. He testified:
"A. It was a plead guilty on all three charges for the amount of narcotics that it was, that was why I got the sentence that I received."
"[N]o witness, whether he be defendant or not, can be asked on cross-examination whether or not he has ever been indicted or arrested, and can only be questioned as to conviction. * * *" La.R.S. 15:495. This rule protects a witness from interrogation with respect to an indictment or a count of an indictment which has not led to a conviction. Consequently, the trial judge and the prosecuting attorney were mistaken in thinking that it was permissible to cross-examine the defendant as to counts of the indictment upon which he was not convicted. As it turned out, however, according to the defendant's testimony, he was convicted upon all three counts of the indictment about which he was questioned. Therefore, there was no violation of La.R.S. 15:495 because the defendant was cross-examined before the jury only as to the convictions to which he admitted.
Although a careful prosecuting attorney will refrain from mentioning the indictment in cross-examining a witness as to his conviction, prejudicial error does not occur under La.R.S. 15:495 upon mere reference to an indictment count upon which the defendant was convicted. In all probability each juror is aware that a conviction must be preceded by an indictment and will infer the existence of an indictment from evidence or admission of a conviction. Of course, extensive reading of detailed provisions of an indictment during such cross-examination, even if restricted to a charge upon which conviction has been obtained, may violate the rule. As Professor McCormick observes, the more reasonable practice, minimizing prejudice and distraction from the issues, is the generally prevailing one that beyond the name of the crime, the time and place of conviction, and the punishment, further details such as the name of the victim and the aggravating circumstances may not be inquired into. McCormick on Evidence, § 43, p. 88 (Cleary ed. 1972). In the present case, however, the defendant was not prejudiced because the prosecuting attorney did not elicit by his reference to the indictment further details beyond defendant's convictions.
The question of whether a defendant may be cross-examined about the manner in which he served his sentence or complied with the terms of his probation is not presented by the present case. The defense attorney objected at trial only to the prosecution's inquiry into the indictment counts which he believed to have been dismissed. The defense trial tactics called for the defendant to take the stand and make a full disclosure of his previous conviction. Apparently, his counsel believed it in the defendant's best interests to allow full inquiry into the details of defendant's sentence and probation without objection. Defendant cannot wait, with an anchor to windward, *1076 to urge such a defect or irregularity for the first time after conviction. See La.C.Cr.P. art. 841. Accordingly, the discussion of this issue in our original opinion was unnecessary.
Discussion of certain other assignments of error was pretermitted in the original opinion due to its finding of reversible error in Assignment of Error Number 13. For reasons set forth below, a review of these assignments reveals no reversible error.

ASSIGNMENTS OF ERROR NOS. 2 and 3
By these assignments defendant complains that the trial judge failed to follow the sentencing guidelines contained in La.C. Cr.P. art. 894.1, and that the sentence he received is excessive.
La.C.Cr.P. art. 894.1 sets forth criteria for a sentencing judge to use in determining whether (1) to suspend a defendant's sentence or place him on probation, (2) to impose a sentence of imprisonment, and (3) if imprisonment is the appropriate disposition, whether the sentence should be closer to the maximum rather than to the minimum statutory range of sentence. State v. Williams, 397 So.2d 1287 (La.1981); State v. Sepulvado, 367 So.2d 762 (La.1979). Subsection (C) of La.C.Cr.P. art. 894.1 provides that the trial court shall state for the record the considerations taken into account and the factual bases therefor in imposing sentence. This in most cases is crucial to this court when called upon to exercise its constitutional function to review a sentence complained of as excessive. State v. Williams, supra, 397 So.2d at 1291; State v. Sepulvado, supra. Without the trial court's articulation of the factual basis of each ground which influenced its disposition, the sentence may appear to be arbitrary or excessive, unless there is evidence elsewhere of record which clearly illumines the sentencing choice. State v. Williams, supra, 397 So.2d at 1292.
In sentencing the defendant the trial judge made only the following remarks:
"* * * The court having found you to be a habitual offender, second felony the law requires a sentence of one third minimum or double the maximum which would run from somewhere around 16.7 years as a minimum to 100 years as a maximum. The court has reviewed in its own mind the facts of this offense and the matters taken into consideration for the second felony offender status and considering all of those matters and the seriousness of the offense, the court hereby sentences you to serve a period of 75 years at hard labor with the Department of Corrections * * *."
Although the trial judge's brief statement standing alone would not fulfill the requisites of La.C.Cr.P. art. 894.1, we conclude that the record in this case clearly illumines the sentencing choice. The sentencing judge presided over the defendant's trial and listened to three days of testimony. The victim testified that the defendant shot him at point blank range although he had identified himself as a police officer and was unarmed. It is undisputed that the defendant fled, leaving the victim wounded and permanently paralyzed from the chest down. The trial judge apparently accepted the victim's version of the altercation. Although conflicting, the evidence reasonably supports his findings.
In addition to showing that defendant had previously been convicted and had served time for possession of narcotics for sale, the record reflects that the trial judge became aware that defendant's probation had been revoked in California during the second offender hearing, although the documentary evidence by which the state proved the revocation has not been made a part of the record for our review.
Defendant's seventy-five year sentence was substantially short of the maximum statutory sentence of one hundred years, although it was closer to the maximum rather than to the minimum end of the statutory range. The factual bases for the sentence were set forth in detail in the trial and multiple offender hearing evidence. Together with the judge's articulated reasons, we conclude that the sentencing choice *1077 was clearly illumined and was not arbitrary or excessive.

ASSIGNMENTS OF ERROR NOS. 4, 5, and 17
In these assignments defendant cites three instances of alleged prosecutorial misconduct during the state's closing argument.
In the first instance defendant challenges the reference to his failure to introduce testimony illustrating the victim's history of violence. Defense counsel in his opening statement indicated he would introduce testimony regarding the victim's known aggressiveness. At trial, the court refused to allow the victim to be questioned in regard to an unspecified, pending legal action allegedly resulting from his violent character. La.C.Cr.P. art. 774 provides that the argument shall be confined to the evidence admitted, to the lack of evidence, to conclusions of fact that may be drawn therefrom, and to the law applicable to the case. The statement to which defendant objected was permissible argument concerning the lack of evidence by which the defense counsel said in his opening statement the victim's violent character would be shown. Furthermore, the trial judge sustained the defense objection and barred further reference to the subject.
This assignment is without merit.
Defendant's second challenge concerns a personal attack made on the defense counsel while the prosecutor was trying to rebut a defense allegation that the victim in this case was a knowing participant in a scheme to transfer stolen goods. The prosecutor answered his own rhetorical question concerning the victim's unimpeached character by stating: "Because [defense counsel] is full of bull in his accusation that this was a crooked policeman." Defense counsel immediately objected to the remark on the grounds that it was an unprofessional attack on his character and requested an admonishment that arguments be confined to the evidence. The trial judge sustained the objection and admonished the prosecutor. An admonition was the only relief requested or warranted under the circumstances. See La.C.Cr.P. art. 771. This assignment is without merit.
In the third instance defendant complains that the prosecutor referred during closing argument to a plea bargain defendant received in California and falsely represented to the jury that such agreements, which he referred to as "deals," were not acceptable to the Caddo Parish district attorney. The issue of whether these remarks exceeded the scope of argument is not before us, however, because defense counsel failed to object to either of them during closing argument. This assignment is without merit.

ASSIGNMENT OF ERROR NO. 18
Defendant argues in this assignment that the trial court erred in adjudging him a second offender.
The defendant was found guilty of attempted first degree murder on November 9, 1979. The state subsequently filed a second felony bill of information against the defendant and the trial court orally and by written opinion entered a finding of guilty. The defendant maintains that (1) there was inadequate proof of his earlier conviction; (2) there was no showing by the state that the defendant was boykinized at that first conviction; and (3) more than five years had elapsed since the first conviction, making conviction as a multiple offender inappropriate under La.R.S. 15:529.1(C).
The contention that there was inadequate proof tendered to establish the first conviction is without merit. At the multiple offender hearing the state introduced exemplified and certified copies of California court records that showed that defendant was convicted after plea of guilty of the charge of possession of heroin for sale. Moreover, the trial court was entitled to refer to defendant's admission on direct examination at trial that he was convicted in California of the felony offense of possession of narcotics for sale. The trial judge has a right in the multiple offender proceeding *1078 to take judicial cognizance of any prior proceeding which was a part of the same case he had previously tried. State v. Jones, 332 So.2d 461 (La.1976); State v. O'Day, 191 La. 380, 185 So. 290 (1938). The copies of the California court records and cognizance of defendant's admission of his previous conviction during his trial were adequate proof of the prior felony conviction. La.R.S. 15:529.1(F); State v. Jones, supra.
Defendant's other contentions challenging his adjudication as a second offender are also without merit. Defendant concedes in brief that documents introduced at the second offender hearing included a contemporaneous record made at his California conviction which indicates he pleaded guilty with the advice of counsel. Defendant also admitted at trial that he pleaded guilty to possession of narcotics for sale and was represented by counsel in entering his plea. Therefore, the burden shifted to the defendant to prove that he did not waive his Boykin rights at the time of his out-of-state guilty plea. State v. Bolton, 379 So.2d 722 (La.1979). He may do so in the enhancement proceedings only by the colloquy at the time of the plea of guilty, which must affirmatively show substantial defect in this regard. State v. Bolton, supra. Defendant failed to produce his California guilty plea colloquy.
The five year "cleansing" period provided in La.R.S. 15:529.1(C) had not elapsed in defendant's case. His prior conviction in California occurred on June 8, 1973. He was sentenced to six months in prison and five years on active probation. He was adjudged a multiple offender on January 21, 1980. The enhanced sentence statute, La.R.S. 529.1, is not applicable when a period of more than five years has elapsed between the expiration of the sentence imposed for the last previous felony conviction and the time of commission of the latest felony. The statutory intent is that a sentence expires when the prisoner is discharged from state custody and supervision, whether the sentence has been extended through revocation of probation or parole or shortened by law due to "good time" diminution of the original sentence. See State v. Anderson, 349 So.2d 311 (La.1977). Accordingly, five years had not elapsed between the expiration of defendant's California sentence and the time of commission of his Louisiana offense. The record reflects that he has not been discharged from California probation supervision due to a violation of its conditions. Moreover, five years had not elapsed between the date originally scheduled for his probation termination/discharge and his commission of his latest felony.
This assignment is without merit.

ASSIGNMENT OF ERROR NO. 16
Defendant assigns error to the trial court's denial of his motion for a new trial. He argues that a new trial should have been ordered on the grounds that the evidence was insufficient to support the conviction and that undue prejudice was created by a spectator, the victim's twin brother, who stared at the defendant during trial.
Defendant argued that the evidence was insufficient to support a finding beyond a reasonable doubt that he shot the victim with the specific intent to kill or do great bodily harm. Defendant testified at trial that the shooting was accidental. However, the victim testified that his assailant drew a pistol and aimed the pistol shot directly at him. Eyewitnesses to the shooting testified that as the victim reached into the defendant's car a shot was fired and that the victim fell back wounded. Although the defendant at trial contended that the shooting was an accident, the state introduced inculpatory statements made the day of the offense in which the defendant admitted he pulled the trigger without claiming it was accidental. After viewing the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found beyond a reasonable doubt that the defendant possessed the specific intent to kill the victim in this case. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1970). Therefore, the trial court's denial of the *1079 motion for a new trial on this ground was not error.
The trial judge noted that the victim's brother, who stared at the defendant during trial did not resemble the paralyzed officer. In particular, the spectator brother wore a beard, whereas the victim witness was clean shaven. There was no reason for the jury to be aware of their relationship. Moreover, the brother was not constantly in the courtroom and did not attend the whole trial. The trial judge did not abuse his discretion in denying the new trial motion based on this ground.
This assignment is without merit.

Decree
For the reasons assigned, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[*] Judges CECIL C. CUTRER, JIMMY M. STOKER, and NED E. DOUCET, Jr., of the Court of Appeal, Third Circuit, participated in this decision as Associate Justices Ad Hoc, joined by Chief Justice JOHN A. DIXON, Jr. and Associate Justices PASCAL F. CALOGERO, Jr., JAMES L. DENNIS, and JACK C. WATSON.
[1] The trial court's ruling concerning the counts dropped from the indictment was as follows:

"... the court is of the opinion that he is entitled to go into the facts and circumstances surrounding the conviction and if it was a multiple count indictment, then that allows him to question the defendant as to those counts. So your objection is overruled."