419 So.2d 844 (1982)
STATE of Louisiana
v.
Darryl JETT.
No. 81-KA-3295.
Supreme Court of Louisiana.
September 7, 1982.
Rehearing Denied October 15, 1982.
*845 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Eddie Knoll, Dist. Atty., Cliff Laborde, Asst. Dist. Atty., for plaintiff-appellee.
J. Michael Small, Katherine Williamson, Alexandria, for defendant-appellant.
WILLIAM NORRIS, III, Justice Ad Hoc[*].
Defendant, Darryl Jett was charged by grand jury indictment with two counts of first degree murder in violation of La.R.S. 14:30, one count of attempted first degree murder in violation of La.R.S. 14:27 and La.R.S. 14:30 respectively, and one count of armed robbery in violation of La.R.S. 14:64. At arraignment defendant pled not guilty to all charges but subsequently changed his plea to not guilty and not guilty by reason of insanity. Thereafter, a trial date was fixed on the two first degree murder counts with the state seeking the death penalty. On the day of trial, defendant withdrew his plea of not guilty by reason of insanity to all charges after which witnesses were sequestered and voir dire began. The following day, prior to opening statements, pursuant to a plea bargain, defendant was allowed to plead guilty as charged to all charges with the understanding that the death penalty would not be imposed in the first degree murder counts, that he would receive the maximum penalty for each charge to which he pled guilty, and that his sentences would be imposed consecutively. After waiving his right to all legal delays, defendant was sentenced to two life sentences *846 for the two first degree murder charges, fifty years for the attempted first degree murder charge, and ninety-nine years for the armed robbery charge, all sentences to run consecutively. It is from the imposition of the consecutive sentences that defendant appeals, asserting that the consecutive nature of the sentences renders them excessive.
In our initial review of the record, we discovered a possible error in the proceedings which requires our consideration notwithstanding the absence of an assignment of error, that is, whether or not the defendant could validly enter a plea to first degree murder without capital punishment.
La.C.Cr.P. Art. 920 dictates the scope of our review in criminal appeals and provides in pertinent part as follows:
The following matters and no others shall be considered on appeal:
* * * * * *
(2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence.
Under this provision, we will consider any errors that "are discoverable by a mere inspection of the pleadings and proceedings." These errors are "patent errors."
At argument, the possibility of a patent error in these proceedings was brought to the attention of counsel for the defendant and the state. An opportunity was afforded to all parties to further address this issue by additional briefs resulting in an additional brief being filed on behalf of defendant in which defendant contends that he is now seeking to have his previously entered pleas of "not guilty without capital punishment" vacated if, and only if, a condition of the remand is this court's exclusion of the death penalty.

FACTS
From the record, it appears to be undisputed that defendant and four accomplices entered a night club in Marksville, Louisiana, on February 14, 1981, at approximately 4:00 a. m. armed with handguns and shotguns, and engaged in a shooting spree which resulted in the killing of two men and serious injury to another who received five gunshot wounds. Thereafter, defendant and his companions robbed the wounded man and another patron, after which they fled the scene. These facts formed the factual basis for the pleas in question.

VALIDITY OF THE GUILTY PLEA
The validity of a guilty plea to first degree murder without capital punishment under the present statutory scheme is res nova. The United States Supreme Court in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), finally addressed the issue of the constitutionality of capital punishment and held that the death penalty as imposed in Georgia and Texas at that time was violative of the eighth and fourteenth amendments of the United States Constitution. The constitutional infirmity specified within that decision was that of excessive jury discretion. Although the opinion in Furman was a per curiam opinion, there were five separate concurring opinions. The court in essence held that the imposition of the death penalty in that case[1] constituted cruel and unusual punishment in violation of the eighth and fourteenth amendments. (408 U.S. 239, 240, 92 S.Ct. at 2727). There were also three separate dissents with reasons. In that case, the constitutionality of untrammeled jury discretion in the imposition of the death penalty was put squarely at issue. In Furman, Justices White, Stewart, and Douglas had expressed great concern over the discretion exercised by juries in recommending punishment in capital cases.
Thereafter, in 1976, the United States Supreme Court in Jurek v. Texas, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); and Gregg v. *847 Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), upheld the revised capital sentencing procedures in Georgia, Texas, and Florida, wherein bifurcated trial procedures were utilized in capital cases. In these proceedings, the initial phase of the trial dealt solely with the defendant's guilt or innocence. Upon a finding of guilty, the trial jury was reconvened and evidence was introduced relating to the issue of an appropriate sentence after which the jury could return a sentence of death only if specific aggravating factors were found. In those cases, the Court found that the legislative guidance provided by the bifurcated trial statutes cured the constitutional defects identified in Furman. These decisions necessarily resulted in widespread revisions of state capital punishment procedures. Because the direction in which the Supreme Court was to move in this area was not immediately ascertainable, the revision process engaged in by some of the states has largely been by trial and error. Louisiana has been no exception to this rule.[2]
In 1973 Louisiana made several changes in the procedures and statutes pertaining to capital cases. Subsequent to the court's holding in Furman, the Louisiana legislature amended the first degree murder statute. See 1973 La. Acts, No. 109 § 1, Art. 30. In hindsight, it appears that the legislature expected that the imposition of capital punishment under the new statute, with its more tightly defined categories of murder, would be found constitutional by the Furman court. By combining more tightly defined murder categories with the mandatory death penalty clause, the legislature attempted to insure that such a sentence would no longer be "so wantonly and so freakishly imposed" (408 U.S. at 310, 92 S.Ct. at 2762) nor imposed so infrequently that the threat of death would cease to be of substantial deterrent value. (408 U.S. at 311-312, 92 S.Ct. at 2763).
In 1973, the legislature also amended the Code of Criminal Procedure to remove the earlier available option to the jury of qualifying its verdict of guilty in a capital case by deleting the words "without capital punishment" and to remove the qualified plea of guilty without capital punishment.[3] After the 1973 amendment, the article pertaining to qualified verdicts read that any such qualification was to have no effect whatsoever. The article relating to qualified pleas simply deleted the language providing for such plea. This revision was clearly designed to limit the jury discretion found so objectionable in Furman by Justice White. See La.C.Cr.P. Art. 817; 1973 La. Acts, No. 125 § 1; 408 U.S. at 314, 92 S.Ct. at 2764.
Thereafter, in 1975, the Louisiana legislature made one change in La.R.S. 14:30 by adding aggravated burglary to the felonies enumerated in La.R.S. 14:30(1). See 1975 La. Acts, No. 327.
This was the state of the law in 1976 when the United States Supreme Court rejected the revised Louisiana procedures in Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976).[4] Roberts was found guilty of first degree murder and sentenced to death. The court rejected Louisiana's efforts to correct eighth amendment defects by narrowing the definition of first degree murder. These narrower categories were seen as an inadequate method of offsetting "the harshness and inflexibility of a mandatory death statute." (428 U.S. at 332, 96 S.Ct. at 3005).
The majority also attacked the Louisiana responsive verdict system finding that the standardless jury discretion held unconstitutional in Furman was compounded in a system in which a jury hearing a first degree *848 murder case received instructions on and was permitted to return verdicts of lesser included offenses even if no evidence of those lesser crimes had been offered. (428 U.S. at 334-335, 96 S.Ct. at 3007). Therefore, the Louisiana system was unconstitutional because there were no standards provided to guide the jury in its power to select those first degree murderers who would receive death sentences, and there was no meaningful appellate review of the jury's decision. (428 U.S. at 335-336, 96 S.Ct. at 3007).
In the subsequent case of (Harry) Roberts v. Louisiana, 431 U.S. 633, 97 S.Ct. 1993, 52 L.Ed.2d 637 (1977), concerning a conviction which occurred prior to the 1976 revision of the first degree murder statute, the defendant was charged and convicted of the murder of a police officer under La.R.S. 14:30(2) and received the mandatory death sentence. In a per curiam opinion, the Supreme Court held subsection (2) to be unconstitutional. While the majority recognized the killing of a police officer who was performing his duty to be an aggravating factor, the statute was found to be defective because of its failure to provide the jury with any opportunity to consider mitigating circumstances which might be relevant in a sentencing hearing under a bifurcated trial system.
In 1976, the legislature radically altered the definition of first degree murder and the statutory procedure in order to comply with the Supreme Court's decision in the first Roberts case. See 1976 La. Acts, No. 657. The felony-murder offenses of the prior statutes were reclassified as second degree murder, punishable by life imprisonment without benefit of parole, probation, or suspension of sentence for forty years. See 1976 La. Acts, No. 657 § 2.
Additionally, the Louisiana Code of Criminal Procedure was amended adding Articles 905 through 905.9[5] to provide for a *849 bifurcated procedure to deal with sentencing in capital cases. See 1976 La. Acts, No. 694 § 1 and 1977 La. Acts, No. 105. Thus, a new system of trial was established for capital cases. In this bifurcated proceeding, a sentencing hearing followed a verdict of guilty in a capital case.
Additionally, the second degree murder statute was amended in 1977 to include all homicides where the offender has a specific intent to kill under circumstances that would be first degree murder under Article 30 but the killing is accomplished without any of the aggravating circumstances of La.C.Cr.P. Art. 905.4. See 1977 La. Acts, No. 121.
During the 1978 legislative session, the definition of second degree murder was again amended to delete paragraph (B) which was added in the 1977 Act (see 1978 La. Acts, No. 796), which had previously resulted in our finding that the Louisiana first degree murder statute had been amended by implication to include the requirement that the state prove the existence of an aggravating circumstance during the guilt phase of the trial. See State v. Payton, 361 So.2d 866 (La.1978).
In 1979, the legislature again amended the first and second degree murder statutes and amended La.C.Cr.P. Art. 905.4 defining aggravating circumstances. See 1979 La. Acts No. 74.
Thus, the law now stands and so stood at the time that the instant offense was committed by the defendant.
The applicable article herein is La.C.Cr.P. Art. 557 relating to guilty pleas in capital cases which provides:
A court shall not receive an unqualified plea of guilty in a capital case. If a defendant makes such a plea, the court shall order a plea of not guilty entered for him. (1973 La. Acts No. 134, § 1)
A mere reading of the provisions of this article indicates that while an unqualified plea cannot be accepted by virtue of its language, conversely a qualified plea of guilty without capital punishment could be encompassed as a valid plea under its provisions.
*850 Prior to its 1973 amendment the article read:
A court shall not receive an unqualified plea of guilty in a capital case. If a defendant makes such a plea, the court shall order a plea of not guilty entered for him. The defendant, with the consent of the district attorney, may plead "guilty without capital punishment."[6] (Emphasis added.)
A tracing of the history of capital offenses since the Furman decision makes it obvious that the article was amended in 1973 to remove the provision providing for a plea of "guilty without capital punishment" because it was felt that this qualified plea might be subject to the same constitutional infirmities as the qualified verdict provision of La.C.Cr.P. Art. 817. [See 34 La.L.Rev. 334-338.] relating to the unguided discretion granted by the article which was held unconstitutional. Furthermore, it is obvious that since a jury could not return such a qualified verdict the court was not authorized to accept such a plea. In an effort to enact a constitutionally acceptable capital offense scheme, the legislature obviously felt that neither the jury, the trial judge or the district attorney should have any discretion in capital cases.
This was the legal state of affairs when Roberts v. Louisiana, supra, held that the death penalty as imposed thereunder was unconstitutional. Thereafter, many legislative changes were made in an attempt to formulate a constitutionally acceptable statutory scheme for capital offense. Included in those changes was not only a redefinition of the crime of first degree murder but the addition of the bifurcated trial proceedings. By the addition of La.C.Cr.P. Art. 905 through 905.9, the jury has again been given the discretion (through the application of strictly enforced guidelines provided in those articles) to qualify its verdict of guilty, i.e., guilty with capital punishment or guilty without capital punishment. Thus, the jury can in effect and does return a qualified verdict in a capital case. Albeit that verdict is only returned subject to strict guidelines, the qualified verdict in capital cases has been returned to the statutory scheme.
However, the qualified plea has not been expressly returned by any post-1973 enactments to the statutory scheme in capital cases although it certainly is implied by the very language of the article which does not expressly prohibit such a plea. Because the qualified verdict has been successfully returned to the statutory scheme without constitutional infirmity, there is no longer a valid reason to conclude that a qualified plea of guilty without capital punishment would be unconstitutional. Therefore, we conclude that the effect of these enactments places the law in the same general posture found in 1952 when we addressed a similar question in State v. Green, 221 La. 713, 60 So.2d 208 (1952). At that time, Article 262 of the Code of Criminal Procedure and La.R.S. 15:262 (the source provisions for Art. 557) read as La.C.Cr.P. Art. 557 does now. Also, a jury could return a qualified verdict of guilty without capital punishment. Green involved a murder case where the trial court refused to accept defendant's plea of guilty of murder without capital punishment. In affirming the trial court's ruling, this court stated:
The ruling was correct. There is no provision of law requiring the court to accept a qualified plea of guilty in any case. Under Article 261 of the Code of Criminal Procedure, LSA-R.S. 15:261 there are four kinds of pleas to an indictment, viz., guilty, not guilty, former jeopardy and insanity. True enough, in capital cases, the court is without authority to receive an unqualified plea of guilty, see Article 262 of the Code of Criminal Procedure, LSA-R.S. 15:262, but this does not imply the converse, as counsel for defendant contend, that the judge is bound to accept a qualified plea in such matters. (Emphasis added.) 60 So.2d 213 *851 We can only and do conclude that this means provided a jury could return the qualified verdict of guilty without capital punishment, that a trial court within its discretion could then and may now accept such a qualified plea pursuant to a valid plea bargain but was not then nor now mandated to accept such a plea. That reasoning is equally applicable under both the aforementioned as well as the present statutory scheme.
While in the instant case and under the present statutory scheme there arguably exist two qualified pleasguilty without capital punishment and guilty with capital punishment, it is apparent without need for further amplification that a qualified plea of guilty with capital punishment would be prohibited under the article because the law has long been to the effect that a person cannot plead guilty in a manner to bring about his own death. There is a well founded legislative policy against a person accomplishing such judicial suicide.
We realize that in so interpreting La.C. Cr.P. Art. 557 we are formulating a procedure not specifically provided for but also not expressly prohibited under the Code of Criminal Procedure or other statutory provisions. In such instances, La.C.Cr.P. Art. 3[7] applies and dictates that the court proceed in a manner consistent with the spirit of the code and other applicable legislation. See State v. Byrd, 385 So.2d 248 (La.1980). By holding that a trial court may accept a defendant's plea of guilty to first degree murder without capital punishment pursuant to a valid plea bargain, we give effect to the constitutional and statutory provisions that expressly prohibit a defendant from pleading guilty in a manner to bring about his own death but also recognize and give effect to the statutory scheme that provides for a sentence of life imprisonment without benefit of parole, probation or suspension of sentence following a verdict of guilty of first degree murder.[8]
We therefore hold that pursuant to a valid plea bargain, a trial court may but is not required to accept a plea of guilty without capital punishment in a first degree murder case. In this case, the court chose to accept these pleas and the pleas entered in the instant case to two counts of first degree murder are valid. This conclusion is bolstered by our holding that the same result could be easily accomplished by allowing the district attorney in his inherent power to informally amend the first degree murder indictment to second degree murder in open court in the presence of the defendant after which a plea of guilty to the lesser charge could be entered necessarily resulting in the same sentence as given here of life imprisonment without benefit of parole, probation or suspension of sentence. See State v. Gilmore, 332 So.2d 789 (La.1976).

EXCESSIVENESS OF SENTENCE
Defendant contends that the trial court committed reversible error in declaring that the sentences imposed should run consecutively rather than concurrently, in that the imposition of consecutive sentences constitutes cruel, unusual, and excessive punishment, in violation of the United States and Louisiana constitutions. Defendant asserts that the sole fact which renders these sentences excessive is the fact that they were imposed consecutively.
Defendant obviously does not contend that the sentences were excessive because he received the mandatory sentences for each of the first degree murder counts and *852 the maximum sentences for the attempted first degree murder charge and the armed robbery charge. He further does not dispute the fact that he knew he was going to receive the exact sentences he received when he pled guilty to all four charges to escape the death penalty. He reiterates that the plea bargain was struck for but one purposeto avoid the possible imposition of the death penalty. However, he contends that this should not operate to deprive him of his right to have his sentence reviewed to determine whether or not it is excessive and thereby violative of the Louisiana Constitution.
In the instant case, the record clearly reflects that the defendant knowingly and voluntarily agreed to the imposition of the consecutive sentences in advance of their actual imposition. The record makes it equally clear that he did in fact so agree to avoid the death penalty.
The facts of this case which are undisputed by defendant indicate that the following aggravating factors as enumerated by La.C. Cr.P. Art. 905.4 are present in this case, e.g., (1) the defendant was engaged in the perpetration of an armed robbery, (2) the defendant knowingly created a risk of death or great bodily harm to more than one person and (3) [possibly,] the offense was committed in an especially heinous, atrocious, or cruel manner. [See La.C.Cr.P. Art. 905.4(a), (d) and (g)]. Therefore, it appears that defendant was justified in the reasonable belief that he might be subjected to the death penalty after being found guilty on either or both of the first degree murder counts.
Although it is tempting to rely on the fact that the sentences were agreed to by all parties to summarily conclude that there was no necessity for the trial court to comply with La.C.Cr.P. Art. 894.1 and to bar the defendant from complaining of the excessive length of the sentence [see State v. Gray, 404 So.2d 1215 (La.1981)], we prefer not to do so and will address the issue squarely concluding that our review of possible constitutional error is not absolutely precluded by a defendant's agreement to plead guilty or to receive a particular sentence.
Initially, we note that the trial court did not comply with the sentencing guidelines of La.C.Cr.P. Art. 894.1. However, this lack of compliance does not necessarily require that the sentences be set aside if the record otherwise clearly illumines the trial court's sentencing choice and demonstrates that the sentence is not arbitrary or excessive. State v. Martin, 400 So.2d 1063, on rehearing 400 So.2d 1074 (La.1981). Our review of the instant record indicates that in this particular case, the record is sufficient for us to conclude that the trial court did not abuse its discretion or impose constitutionally excessive sentences.
The plea bargain certainly reduced defendant's sentencing exposurefrom death to life, literally.
While the general rule that concurrent rather than consecutive sentences are the usual rule for a defendant without previous criminal record and in the absence of a showing that the public safety requires a longer sentence was recognized in State v. Underwood, 353 So.2d 1013 (La.1977), this court has never held that if convictions arise out of a single course of illegal conduct, consecutive sentences will necessarily be found to be excessive. State v. Ortego, 382 So.2d 921 (La.1980). Other factors must be taken into consideration.
Consecutive sentences are justified when the offender poses an unusual risk to the safety of the public. State v. Watson, 372 So.2d 1205 (La.1979).
In the instant case defendant engaged in a senseless, unprovoked shooting spree which resulted in the deaths of two innocent bystanders and the near death of a third innocent bystander after which he robbed two persons at gunpoint. Consequently, the consecutive sentences were justified by the dangerous propensities exhibited by the defendant on this occasion. He clearly poses a risk to the safety of the public. Therefore, the consecutive nature of the sentences imposed does not render them excessive in this case.
*853 Accordingly, the conviction and sentence in the instant case are affirmed.
ROBERT L. LOBRANO, J. ad hoc, concurs with reasons.
ROBERT L. LOBRANO, Justice Ad Hoc, concurring in part.
I concur with the majority reasoning in this case as to all issues except the question of excessive sentencing. I agree with the conclusion that the sentences are not excessive, however I would rely on the plea bargaining agreement. The defendant knew prior to entering his guilty plea the consequences of such a plea, yet according to the majority he is allowed to object at the appellate level. I am of the opinion that defendant waived his right to object by agreeing to the plea bargain.
NOTES
[*] Judges William Norris, III, and Fred C. Sexton, Jr., of the Court of Appeal, Second Circuit, and Judge Robert L. Lobrano of the Court of Appeal, Fourth Circuit, participated in this decision as Associate Justices pro tempore, joined by Associate Justices Pascal F. Calogero, Jr., James L. Dennis, Jack C. Watson, and Harry T. Lemmon.
[1] In that case the defendant was found guilty and sentenced to death under a unitary trial system.
[2] Louisiana has amended its definition of first degree murder four times by specific acts of the legislature and once by implication in an amendment to the second degree murder article. See State v. Payton, infra.
[3] Until the existing statutory scheme for capital crimes was enacted, historically, under La.C. Cr.P. Art. 557, and its predecessor, the only qualified plea was guilty without capital punishment since the qualified plea of guilty caused the mandatory death penalty.
[4] This case was handed down on the same day as Jurek, Proffitt, and Gregg, supra.
[5] Art. 905. Capital cases; sentencing hearing required

Following a verdict of guilty in a capital case, a sentence of death may be imposed only after a sentencing hearing as provided herein.
Art. 905.1 Sentencing hearing jury; commencement
The sentencing hearing shall be conducted before the same jury that determined the issue of guilt. The order of sequestration shall remain in effect until the completion of the sentencing hearing.
Art. 905.2 Sentencing hearing; procedure and evidence
The sentencing hearing shall focus on the circumstances of the offense and the character and propensities of the offender. The hearing shall be conducted according to the rules of evidence. Evidence relative to aggravating or mitigating circumstances shall be relevant irrespective of whether the defendant places his character at issue. Insofar as applicable, the procedure shall be the same as that provided for trial in the Code of Criminal Procedure. The jury may consider any evidence offered at the trial on the issue of guilt. The defendant may testify in his own behalf. In the event of retrial the defendant's testimony shall not be admissible except for purposes of impeachment.
Art. 905.3 Sentence of death; jury findings
A sentence of death shall not be imposed unless the jury finds beyond a reasonable doubt that at least one statutory aggravating circumstance exists and, after consideration of any mitigating circumstances, recommends that the sentence of death be imposed. The jury shall be furnished with a copy of the statutory aggravating and mitigating circumstances.
Art. 905.4 Aggravating circumstances
The following shall be considered aggravating circumstances:
(a) The offender was engaged in the perpetration or attempted perpetration of aggravated rape, aggravated kidnapping, aggravated burglary, or armed robbery;
(b) The victim was a fireman or peace officer engaged in his lawful duties;
(c) The offender was previously convicted of an unrelated murder, aggravated rape, or aggravated kidnapping;
(d) The offender knowingly created a risk of death or great bodily harm to more than one person;
(e) The offender offered or has been offered or has given or received anything of value for the commission of the offense;
(f) The offender at the time of the commission of the offense was imprisoned after sentence for the commission of an unrelated forcible felony;
(g) The offense was committed in an especially heinous, atrocious, or cruel manner.
Art. 905.5 Mitigating circumstances
The following shall be considered mitigating circumstances:
(a) The offender has no significant prior history of criminal activity;
(b) The offense was committed while the offender was under the influence of extreme mental or emotional disturbance;
(c) The offense was committed while the offender was under the influence or under the domination of another person;
(d) The offense was committed under circumstances which the offender reasonably believed to provide a moral justification or extenuation for his conduct;
(e) At the time of the offense the capacity of the offender to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect or intoxication;
(f) The youth of the offender at the time of the offense;
(g) The offender was a principal whose participation was relatively minor;
(h) Any other mitigating circumstance.
Art. 905.6 Jury; unanimous recommendation
A sentence of death shall be imposed only upon the unanimous recommendation of the jury. If the jury unanimously finds the sentence of death inappropriate, it shall recommend a sentence of life imprisonment without benefit of probation, parole, or suspension of sentence.
Art. 905.7 Form of recommendations
The form of jury recommendation shall be as follows:
"Having found the below listed statutory aggravating circumstance or circumstances and, after consideration of the mitigating circumstances offered, the jury recommends that the defendant be sentenced to death.
Aggravating circumstances or circumstances found:
 s/ __________________________
 Foreman"
or
"The jury unanimously recommends that the defendant be sentenced to life imprisonment without benefit of probation, parole or suspension of sentence.
 s/ __________________________
 Foreman"
Art. 905.8 Imposition of sentence
The court shall sentence the defendant in accordance with the recommendation of the jury. If the jury is unable to unanimously agree on a recommendation, the court shall impose a sentence of life imprisonment without benefit of probation, parole or suspension of sentence.
Art. 905.9 Review on appeal
The Supreme Court of Louisiana shall review every sentence of death to determine if it is excessive. The court by rules shall establish such procedures as are necessary to satisfy constitutional criteria for review. (1976 La. Acts No. 694 § 1.)
[6] This last sentence was added after the Green decision, infra, not for the purpose of accepting the plea of guilty without capital punishment but to effectively require the court to accept the plea if entered with the consent of the District Attorney.
[7] Art. 3. Procedures not otherwise specified

Where no procedure is specifically prescribed by this Code or by statute, the court may proceed in a manner consistent with the spirit of the provisions of this Code and other applicable statutory and constitutional provisions.
[8] Since under the present statutory scheme the jury (after considering the aggravating and mitigating circumstances enumerated in La.C.Cr.P. Arts. 905.4-905.9) can recommend a defendant found guilty of first degree murder receive a sentence of life imprisonment at hard labor without benefit of probation, parole or suspension of sentence (in essence of qualified verdict) and the judge is bound to follow this recommendation, there is no compelling reason (as there existed under the 1973 scheme) to bar a defendant from pleading guilty without capital punishment to a capital offense.