1 .PEATROSS, J.
Defendant, Latroy Howard, was charged with one count each of attempted second degree murder, in violation of La. R.S. *1235 14:27 and La. R.S. 14:30.1, and armed robbery, in violation of La. R.S. 14:64. Subsequently, the State agreed to accept Defendant’s guilty plea to reduced charges of aggravated battery, in violation of La. 14:34, and simple robbery, in violation of La. R.S. 14:65. The trial court imposed on Defendant the maximum authorized sentences of ten years at hard labor for the offense of aggravated battery and seven years at hard labor for the offense of simple robbery. Defendant was ordered to serve the sentences consecutively. Defendant moved for reconsideration of his sentences, but this motion was denied. Defendant appeals the sentences as excessive and contends that the court erred in directing them to be served consecutively. For the reasons stated herein, we affirm.
FACTS
On December 7, 1999, Walter Downey (“Downey”) was working alone in the Cash Quick Pawn Shop located in Haughton, Bossier Parish, Louisiana, when he was shot, beaten and robbed by Defendant and his accomplice.[1] At approximately 9:30 a.m. on the day of the robbery, Defendant entered the store and asked Downey if he could look at an electric drill. Downey escorted Defendant to the rear of the store where a tool display was located. While in the back of the store, Downey heard a second person enter the store. Downey went to the front of the store and observed Defendant’s accomplice, Roy Griffin (“Griffin”). Griffin had | ^previously been a customer of the store, so Downey recognized and acknowledged him. Defendant lured Downey back to the rear of the store where Defendant then pulled out a pistol, pushed Downey to the floor and began striking him over the head with the pistol. Defendant then fired two shots at Dow-ney.[2] One shot struck Downey and caused a non-fatal wound to the back of his head. While Defendant was in the back of the store with Downey, Griffin was stealing jewelry from a display case in the front of the store.
After the second shot, Griffin yelled at Defendant not to kill Downey because he (Griffin) could not find any money. Defendant grabbed Downey, pulled him to his feet and brought him to the front of the store. Defendant and Griffin forced Dow-ney to open a safe that was behind the counter at the front of the store, while threatening to kill him if he did not obey their commands. After the safe was open, Downey was pushed to the floor and was then beaten with the butt of a shotgun that had been propped up against a wall in the store. Before exiting the store, Defendant knocked a video surveillance camera off the wall and took it with him. Defendant and Griffin then fled the store, taking the victim’s wallet and over $12,000 in cash, jewelry and other items. When police investigators arrived, they found Downey bleeding from the back of his head and semiconscious. There was a large amount of blood throughout the area behind the counter. [3 Downey was, however, able to describe his assailants to the police before he was airlifted to LSU Medical Center in Shreveport.
After the robbery, Griffin filed a change of address form with the U.S. Postal Service, attempting to reroute Downey’s mail to an address on Highway 164 in Haugh-ton in order to gain access to credit cards *1236 that Griffin had ordered in Downey’s name.[3] Bossier Parish detectives, however, discovered the attempt to change Dow-ney’s address and knew that two people, Emma Dorch (“Dorch”) and Ray Anthony Griffin, had previously lived at the Highway 164 address. Griffin met the description of one of Downey’s assailants. Police investigators monitored the change of address activity and later received calls from a couple of Downey’s current credit card providers who said that someone was attempting to use Downey’s credit cards at locations in Shreveport and Bossier City.
On December 23, 1999, police investigators received information from one of the credit card providers that someone had called the company attempting to change the address on one of the credit cards to the Highway 164 address in Haughton. The police traced the call to a house on Michigan Street in Shreveport and determined that the telephone number was listed under the name Joseph Griffin. A search warrant for the Michigan Street address was obtained and executed by Bossier Parish detectives and Shreveport Police detectives. Both Dorch and Griffin were present at the Michigan Street address when the search was conducted. During the search, Rpolice investigators found two credit cards in Downey’s name in Griffin’s wallet, numerous pawn tickets with a large amount of jewelry which matched the description of some of the stolen jewelry from Downey’s store and several receipts from K-Mart for items that were purchased with credit cards belonging to Downey. The pawn tickets were signed by either Dorch or Griffin. Griffin was arrested and both Dorch and Griffin gave statements which implicated Defendant in the robbery. An arrest warrant was issued for Defendant and he was arrested at his sister’s residence in Shreveport on December 30,1999.
A sentencing hearing was held in July 2001 in Griffin’s case. The trial court heard a victim impact statement from Downey’s daughter, who testified that, as a result of the robbery, her father had begun to suffer back pain, dizzy spells, nausea and a change in personality, all of which were likely to be permanent. She also stated that Downey suffered economic damage because his business had declined by 40 to 45 percent, as people were afraid to patronize the store due to the robbery. She testified that her father had lost over $14,000 in cash and property during the robbery. In addition, the rerouting of Downey’s mail had negatively affected his credit record because of missed bill payments.
Griffin was charged with attempted second degree murder and armed robbery, but agreed to plead guilty to armed robbery in exchange for dismissal of the attempted murder charge. He was sentenced to serve 40 years at hard labor, which this court affirmed in an unpublished opinion.[4]
In As previously stated, Defendant was charged with one count each of attempted second degree murder and armed robbery, but the State agreed to accept Defendant’s guilty plea to reduced charges of aggravated battery and simple robbery. Defendant pled guilty to the reduced charges on October 8, 2001, and was sentenced on June 10, 2002. At the sentencing hearing, both Defendant’s mother and his GED teacher *1237 at the Bossier Parish jail testified. Dow-ney’s daughter also testified.
The trial judge imposed on Defendant the maximum authorized sentences of ten years at hard labor for the offense of aggravated battery and seven years at hard labor for the offense of simple robbery with the sentences to run consecutively. Noting that Defendant could have received up to 149 years at hard labor under the original charges filed against him, the trial judge based the sentences in particular on Defendant’s pre-sentence investigation report and the facts of the case.[5] The trial judge specifically found the sentences appropriate under La. C.Cr.P. art. 894.1, noting that there would be an undue risk that, if Defendant was given a suspended sentence or probation, he was likely to commit another crime; that Defendant was in need of correctional treatment or a custodial environment that could best be provided by commitment to an institution; and that a lesser sentence would deprecate the seriousness of the crime. The trial judge further noted that Defendant’s conduct during the commission of the crime manifested a deliberate cruelty to the victim; that Defendant knew or should have known that the victim was particularly vulnerable; that |fiDefendant created a risk of death or great bodily harm during the commission of the offenses; that Defendant used threats of or actual violence in the commission of the offenses; that the offenses resulted in a significant permanent injury and a significant economic loss to the victim and his family; and that a dangerous weapon was used in the commission of the offenses. Defendant was ordered to serve his sentences consecutively.
Defendant filed a timely motion with the trial court to reconsider his sentence, claiming that his sentences were excessive and that Defendant should have been ordered to serve his sentences concurrently. Defendant argued that the trial judge did not take into account Defendant’s age (17) when the offenses were committed and that Defendant is the father of a young son whom Defendant will not be able to support financially or emotionally if he is incarcerated for 17 years. Defendant also asserted that the trial judge did not take into account his lack of any prior felony convictions. The trial judge denied the motion to reconsider the sentence. Defendant now appeals. On appeal, Defendant raises the following assignments of error:
1. The Honorable Trial Court erred in imposing upon Appellant excessive sentences;
2. The Honorable Trial Court erred in denying Appellant’s Motion to Reconsider Sentence;
3. The Honorable Trial Court erred in imposing upon Appellant consecutive sentences for conduct based on the same act or transaction, or constituting parts of a common scheme or plan, without the particular justification required by prevailing jurisprudence for this action;
4. The Honorable Trial Court erred in fashioning Appellant’s punishment by failing to give adequate consideration and appropriate weight to the presence of 17certain mitigating circumstances in contravention of the requirements of La.C.Cr.P. art. 894.1; and
5. The Honorable Trial Court erred in imposing upon Appellant maximum sentences.
*1238 DISCUSSION
The test imposed by the reviewing court in determining excessiveness of a defendant’s sentence is two-pronged. First, the record must show the trial court took cognizance of the criteria set forth in La.C.Cr.P. art. 894.1. It is the goal of La.C.Cr.P. art. 894.1 to provide a factual basis for the sentence imposed, thus providing a record that will allow for a reasoned review of the sentence. State v. Landos, 419 So.2d 475 (La.1982). The trial judge is not required to list every aggravating or mitigating circumstance as long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App.2d Cir.6/24/98), 715 So.2d 641.
The second prong used to determine if a defendant’s sentence is excessive is to examine whether the sentence imposed is too severe depending on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864.
 A trial court has broad discretion to sentence within the statutory limits. State v. Black, 28,100 (La.App.2d Cir.2/28/96), 669 So.2d 667, writ denied, 96-0836 (La.9/20/96), 679 So.2d 430. Where a defendant has pled guilty to an offense which does not adequately describe his conduct or has received a significant reduction in potential exposure to confinement through a plea bargain, the trial court has great discretion in imposing even the maximum sentence possible for the pled offense. Id. The severity of an imposed sentence may be assessed with consideration of whether the defendant is allowed to plead guilty to an offense that does not adequately describe his conduct or where a significant reduction in potential exposure to confinement is obtained through advantageous plea bargaining. Id. Absent a showing of manifest abuse of the trial court’s discretion, a reviewing court may not set aside a sentence. State v. Guzman, 99-1528, 99-1753 (La.5/16/00), 769 So.2d 1158; State v. Washington, 29,-478 (La.App.2d Cir.4/2/97), 691 So.2d 345.
Among the factors to be considered in determining a defendant’s sentence are the defendant’s criminal history [State v. Ortego, 382 So.2d 921 (La.1980), cert. denied, 449 U.S. 848, 101 S.Ct. 135, 66 L.Ed.2d 58 (1980); State v. Jacobs, 493 So.2d 766 (La.App. 2d Cir.1986)]; the gravity or dangerousness of the offense [State v. Adams, 493 So.2d 835 (La.App. 2d Cir.1986), unit denied, 496 So.2d 355 (La.1986)]; the viciousness of the crimes [State v. Clark, 499 So.2d 332 (La.App. 4th Cir.1986)]; the harm done to the victims [State v. Lewis, 430 So.2d 1286 (La.App. 1st Cir.1983), writ denied, 435 So.2d 433 (La.1983)]; whether the defendant [flConstitutes an unusual risk of danger to the public [State v. Jett, 419 So.2d 844 (La.1982)]; defendant’s apparent disregard for the property of others [State v. Parker, 503 So.2d 643 (La.App. 4th Cir.1987)]; the potential for defendant’s rehabilitation [State v. Sherer, 437 So.2d 276 (La.1983); State v. Lighten, 516 So.2d 1266 (La.App. 2d Cir.1987)]; and whether defendant has received a benefit from a plea bargain *1239 [State v. Jett, supra, State v. Adams, supra].
When two or more convictions arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. La.C.Cr.P. art. 883. Concurrent sentences arising out of a single cause of conduct are not mandatory. State v. Pickett, 628 So.2d 1333 (La.App. 2d Cir.1993), writ denied, 94-0348 (La.5/20/94), 637 So.2d 476; State v. Nelson, 467 So.2d 1159 (La.App. 2d Cir.1985). Rather, it is within a trial court’s discretion to order sentences to run consecutively rather than concurrently. State v. Robinson, 33,921 (La.App.2d Cir.11/1/00), 770 So.2d 868; State v. Coleman, 32,906 (La.App.2d Cir.4/5/00), 756 So.2d 1218, writ denied, 00-1572 (La.3/23/01), 787 So.2d 1010; State v. Derry, 516 So.2d 1284 (La.App. 2d Cir.1987), writ denied, 521 So.2d 1168 (La.1988). All factors in the case are to be considered in choosing whether to impose consecutive or concurrent sentences. State v. Ortego, supra.
Defendant reiterates on appeal that the sentences imposed on him are excessive, that the trial judge faded to adequately articulate his reasons for Imsentence and that the trial judge failed to give sufficient consideration to Defendant’s age at the time of the offenses. Defendant further argues that the trial judge erred in directing the sentences to be served consecutively. After reviewing the record, we do not find that the trial judge committed error.
The trial judge, in the case sub judice, thoroughly examined all the factors in the instant case. Prior to imposing sentence, the trial judge considered both the pre-sentence investigation report and the facts of the case. The trial judge heard testimony from Defendant’s GED instructor, his mother and from the victim’s daughter. He also reviewed the victim’s medical records and noted the benefit Defendant received from his plea bargain. Although Defendant had maintained during his guilty plea that he was not the shooter in this case, the trial judge noted that the victim was certain that Defendant was the shooter.
Defendant had a juvenile record, but no prior felony convictions. He had completed the 8th grade and was working on his GED at the time of sentencing. The trial judge carefully analyzed and gave the proper consideration to the sentencing factors in La.C.Cr.P. art. 894.1. As previously stated, the trial judge determined that there was an undue risk that Defendant would commit another crime if granted probation, that he was in need of correctional treatment in a custodial environment and that a lesser sentence would deprecate the seriousness of the offenses. The trial judge also addressed Defendant’s age and noted that he would still be relatively young when his sentences were completed. The trial judge further In found that Defendant’s conduct manifested deliberate cruelty since the victim was particularly vulnerable due to his advanced age. Defendant had used threats and actual violence during the commission of these offenses, which resulted in significant permanent, physical injury to the victim and in significant economic loss to the victim and his family.
On this record, we do not find constitutional error. Defendant secured a substantial benefit from his plea bargain, which significantly diminished his sentencing exposure from 149 years at hard labor to only 17 years. Due to his young age Defendant had no prior adult criminal history, but the offenses he committed were extremely dangerous and were committed in a vicious manner. The physical harm *1240 done to the victim is severe and permanent. Defendant’s disregard for the property and lives of others is readily apparent and he constitutes a risk of danger to the public.
Our review of the record in the ease sub judice shows an adequate factual basis for the sentences imposed on Defendant. The sentences imposed are lawful and neither grossly disproportionate to the severity of the offenses, nor shocking to our sense of justice. Moreover, the trial judge properly addressed the factors in this case and determined that Defendant should serve his sentences consecutively. The trial judge was well within his discretion to make this ruling. There is no showing of an abuse of the trial court’s discretion in the imposition of the sentences here, which, under the facts and circumstances of this case, are not constitutionally excessive. The trial judge sentenced Defendant lawfully and Defendant’s assignments of error have no merit.
| ^CONCLUSION
For the foregoing reasons, the sentences imposed on Defendant Latroy Howard are affirmed.
AFFIRMED.

. Downey owned the Cash Quick Pawn Shop.

. Defendant had maintained during his guilty plea that he was not the shooter in this case, but the victim gave a statement to authorities in which he said the younger of his assailants was the shooter. Griffin was 41 years old, while Defendant was 17. Also, as previously stated, the victim knew Griffin as a prior customer.

. Griffin had taken Downey’s wallet, which contained Downey’s social security card, driver’s license and other pertinent information that would enable Griffin to obtain a credit card in Downey’s name.

. State v. Griffin, 35,849 (La.App.2d Cir.4/3/02), 817 So.2d 510.

. A maximum sentence for attempted murder is 50 years. A maximum sentence for armed robbery is 99 years, without the benefit of parole.