h STEWART, J.
Shaheed Najeeullah Asad (“Asad”) appeals his convictions of one count of armed robbery and one count of theft and consecutive sentences of 10 years at hard labor for the theft charge and 50 years at hard labor without benefit of parole, probation or suspension of sentence for the armed robbery conviction. For the reasons expressed herein, we affirm the defendant’s convictions and sentences.
*458 FACTS
On April 26, 2001, the Madison Parish Sheriffs department received a call that there had been an armed robbery at the Delta Diamond Casino. The casino was located in the Chevron facility in the town of Delta. Authorities responded and spoke with the cashier, Patricia Guy. During that interview she told them that two black males had entered the casino wearing bandanna-like coverings on their faces and carrying guns. She said that she and a male customer, Henry Hazelrigg, were in the casino when the two armed men arrived. She told the authorities that one of the men told the customer to get down on the floor and that he used duct tape to secure the man’s hands. She said the other one hit her on the head and made her open a door to the room where money was kept. She said they left with $7,522.
The authorities interviewed Hazelrigg who told them that he was playing video poker when someone put him on the floor while holding a gun to the back of his head. He said the gunman told him he would “bust a cap” in him. The customer said that the gunman took his wallet which had approximately $2,200 in cash in it. He said the gunman then used duct tape |?to tie his hands behind his back. Hazelrigg also indicated that there were two men involved in the robbery.
The officers found and took the used duct tape and the video surveillance tape as evidence.
The investigation led the authorities to Shelton Wilson and Otis Guy. They implicated themselves, Asad, and the above-named employee, Patricia Guy. The investigation showed that she acted as an inside person who arranged the robbery with her brother, Asad. Otis Guy, her 18-year-old son, stayed in the vehicle outside the casino as a look out during the robbery. Wilson was also a teenager. Asad was 42 years old at the time of the robbery. While investigating unrelated drug allegations against Asad, a bandanna, .22 shells and a roll of duct tape were found in his residence and vehicle.
Everyone else involved but Asad entered guilty pleas to first degree robbery. All three testified against Asad in exchange for shorter sentences. Following a trial, Asad was found guilty of both the theft of money from the casino and armed robbery of Hazelrigg on November 22, 2002. He was sentenced on April 16, 2003, to 50 years at hard labor without benefit of probation, parole or suspension of sentence for the armed robbery conviction and to 10 years for the theft conviction. The sentences were ordered to be served consecutively. This appeal ensued.
^DISCUSSION

Statements of Co-conspirators

Asad argues that the state failed to provide him with a statement made by a co-conspirator, his sister Patricia Guy, and thus violated its duty to disclose exculpatory statements made by him.
The state argues that the witness tried to protect herself and her brother by changing her story several times. Its position is that whatever the state had up until the trial was provided to the defendant and that Guy changed her testimony while on the stand. The state further argues that even if there is a discovery violation, it is harmless in that Asad has failed to show that the error prejudiced him.
The state concedes that it had a continuing duty to disclose to the defendant any statements made by a co-conspirator prior to the trial. The statement in question is that Asad told his sister the day after the robbery that his co-conspirator had taken Hazelrigg’s wallet. Asad asserts that this *459 information was not supplied to him by the state and that it hindered him in putting forth his defense that he had not been aware the patron had been robbed during the incident.
However, the review of the entire passage of Guy’s testimony shows that she had not divulged this information to the state and that therefore the state had not failed to disclose it to the defendant. Moreover, there was other testimony that supports the position that the robbery of the patron was part of the plan. Only moments earlier, Guy testified that she knew they were going to rob the patron and that it was part of the plan. As a result, |4we find that this assignment lacks merit since the appellant failed to prove that there was a discovery violation that prejudiced him.

Jury Instructions

Asad argues that the state’s case was buttressed when the trial court read special jury instructions a second time when the jury had only requested to be instructed on the definition of principal. The state asserts that a re-reading of the jury instructions is allowed by La. C. Cr. P. art. 808.
The statute governing what a trial judge is to do when the jury requests further instruction is found in La. C. Cr. P. art 808. It reads:
If the jury or any member thereof, after having retired to deliberate upon the verdict, desires further charges, the officer in charge shall bring the jury into the courtroom, and the court shall in the presence of the defendant, his counsel, and the district attorney, further charge the jury. The further charge may be verbal, but shall be in writing if requested by any juror. No charge shall be reduced to writing at the request of a juror pursuant to this Article unless consent is obtained from both the defendant and the state in open court but not within the presence of the jury. The lack of consent by either the defendant or the state shall not be communicated to the jury. A copy of the court’s written charge shall be delivered to the defendant, the state, and the jury.
The record shows that the jury made the following request:
Could you read the definition of principal and first-degree robbery one more time, please?
The trial court then re-read the passages concerning these two issues. The re-reading tracks what was contained in the original charges to the panel. After he read part of the instructions again and the jury had returned to deliberate, Asad’s trial counsel objected on the grounds that the portion about the weapon was “eviden-tiary.” The trial court replied that he had read |Bthe special charges because they were included in the same paragraph with the portion on principal and he “felt like it was relevant.”
Asad argues that the trial court violated La. C. Cr. P. art. 772 which states:
The judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved or refuted.
It is clear that the controlling article is La. C. Cr. P. art. 808 and that under the well-established case law it was not an error for the judge to repeat a charge that had already been given to the jury. State v. Watts, 171 La. 618, 131 So. 729, (La.1930), held that when the jury returned into court and requested to be recharged, it was not error to repeat the court’s *460 charge in whole. This assignment is without merit.

Excessive Sentence

Asad argues that the 10-year sentence for theft to be served consecutively to the 50-year sentence for armed robbery is disproportionate and serves no useful purpose. He further alleges that the court gave no reasons for running the sentences consecutively since the convictions are the result of one continuous action. He asks this court to review the mitigating circumstances and remand for the imposition of a sentence particularized to this offender and this offense.
The state responds that the court adequately considered the guidelines of La. C. Cr. P. art. 894.1 and that a consecutive sentence is not excessive nor was there manifest abuse of the trial court’s discretion.
| fiWhen a defendant fails to file a La.C.Cr.P. art. 881.1 motion to reconsider sentence, the appellate court’s review is limited to the bare claim that the sentence
is constitutionally excessive. State v. Mims, 619 So.2d 1059 (La.1993); State v. Raev, 36,847 (La.App.2d Cir.3/5/03), 839 So.2d 1015, writ denied 2003-0988 (La.10/10/03) 855 So.2d 330; State v. Duncan, 30,453 (La.App.2d Cir.2/25/98), 707 So.2d 164. Constitutional review turns upon whether the sentence is illegal, grossly disproportionate to the severity of the offense or shocking to the sense of justice. State v. Lobato, 603 So.2d 739 (La.1992).
Constitutional review considers whether the sentence imposed is too severe in light of the circumstances of the case and the background of the defendant. A sentence violates La. Const, art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864. A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of that discretion, a reviewing court will not set aside a sentence as excessive. State v. Caraway, 28,769 (La.App.2d Cir.10/30/96), 682 So.2d 856.
La. C. Cr. P. art. 881.1 applies to a defendant’s sentence. This article precludes the defendant from presenting arguments to the court of appeal |7which were not presented to the trial court. In such a circumstance, the defendant is simply relegated to having the appellate court consider the bare claim of constitutional excessiveness. Mims, supra; Duncan, supra.
The test imposed by the reviewing court in determining the exces-siveness of a sentence is two-pronged. The record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App.2d Cir.6/24/98), 715 So.2d 641. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Landos, 419 So.2d 475 (La.1982).
*461 In selecting a proper sentence, a trial judge is not limited to considering only a defendant’s prior convictions but may properly review all prior criminal activity. State v. Jackson, 612 So.2d 993 (La.App. 2d Cir.1993).
The following statutes apply to the Asad’s sentences:
La. R.S. 14:64—Armed Robbery
B. Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than ten years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence.
|sLa. R.S. 14:67—Theft
B. (1) Whoever commits the crime of theft when the misappropriation or taking amounts to a value of five hundred dollars or more shall be imprisoned, with or without hard labor, for not more than ten years, or may be fined not more than three thousand dollars, or both.
The trial court ordered a 50-year term for the armed robbery. The statutory range is 10-99 years; thus, this is not a maximum or near maximum sentence. Although the theft sentence is the maximum ten years, this assignment is without merit.
The judge meticulously outlined his findings under the sentencing guidelines. He noted that deliberate cruelty was used against both Asad’s sister, a co-conspirator, as well as the customer, an innocent bystander. He particularly noted that the evidence showed that Asad had directed his other co-conspirator Wilson to threaten the customer with a gun during the robbery. He noted that the defendant knew or should have known that this victim was an elderly man and that he did not take this point into consideration. Further, the judge specifically noted that Asad was a fourth felony offender and that this was his second conviction for armed robbery. He further found that the Asad was the mastermind of the crime. He found no mitigating circumstances except that no one was injured. The trial court rejected the defendant’s claim that he did not know Wilson had a gun until they started to go inside the casino.
While the aggregate of this sentence has the effect of keeping Asad incarcerated for most of his life, it does not shock one’s sense of justice. One of the victims was elderly. A gun was held to his head, and he was put |ato the ground and tied up. Asad roughed up the other victim/accomplice, his own sister.
Although La. C. Cr. P. art. 883 favors the imposition of concurrent sentences for crimes committed as part of the same transaction or series of transactions, a trial court retains the discretion to impose consecutive penalties in cases in which the offender’s past criminality or other circumstances in his background justify treating him as a grave risk to the safety of the community. State v. Walker, 00-3200 (La.10/12/01), 799 So.2d 461; State v. Feaster, 36,868 (La.App.2d Cir.3/5/03), 840 So.2d 675.
Among the factors to be considered are the defendant’s criminal history, State v. Jacobs, 493 So.2d 766 (La.App. 2d Cir.1986); the gravity or dangerousness of the offense, State v. Adams, 493 So.2d 835 (La.App. 2d Cir.), writ denied, 496 So.2d 355 (1986); the viciousness of the crimes, State v. Clark, 499 So.2d 332 (La.App. 4th Cir.1986); the harm done to the victims, State v. Lewis, 430 So.2d 1286 (La.App. 1st Cir.), writ denied, 435 So.2d 433 (1983); whether the defendant constitutes an unusual risk of danger to the public, State v. Jett, 419 So.2d 844 (La.1982); defendant’s apparent disregard for the property of others, State v. Parker, 503 So.2d 643 (La. *462 App. 4th Cir.1987); the potential for defendant’s rehabilitation, State v. Sherer, 437 So.2d 276 (La.1983), State v. Lighten, 516 So.2d 1266 (LaApp. 2d Cir.1987); and whether defendant has received a benefit from a plea bargain, State v. Jett, supra, State v. Adams, supra.
When consecutive sentences are imposed, the court shall state the factors considered and reasons for the consecutive terms. State v. Green, 614 So.2d 758 (La.App. 2d Cir.1993). A judgment directing that sentences arising from a single course of conduct be served consecutively requires particular justification from the evidence of record. State v. Strother, 606 So.2d 891 (La.App. 2d Cir.1992); State v. Thompson, 543 So.2d 1077 (LaApp. 2d Cir.), writ denied, 551 So.2d 1335 (1989).
Thus, the appellant is correct in raising as error the fact that the judge failed to reference La. C. Cr. P. art. 883 and did not articulate his reasons. However, this court views this as harmless error since the record supports the judge’s decision to impose the consecutive sentences.
In State v. Jarrett, 37,928 (La.App.2d Cir.12/10/03), 862 So.2d 440, this court found:
While the trial court did not specifically state the reason for the consecutive sentences, the court discussed certain factors as set forth above which support the ruling. The rape and forced oral sex conducted at knife-point were particularly vicious. The victim was physically brutalized and mentally traumatized. Jarrett could not verbalize any reason for committing these offenses. He suffers from an impulse disorder and intentionally stopped taking medications prescribed for that disorder. He has a prior criminal record of a misdemeanor drug charge and unauthorized entry of an inhabited dwelling which was reduced by a plea agreement to a misdemeanor. All of these factors, as discussed by the trial court, support a finding that the defendant constitutes an unusual risk of danger to the public. The consecutive sentences therefore do not constitute error, and we find that the sentences are not constitutionally excessive.
Here the trial court was cognizant of Asad’s position as a fourth felony offender and his role as the leader of this crime in which he involved two younger people. The record supports the trial court’s decision to order the sentences served consecutive to each other.

^CONCLUSION

Finding no merit in the defendants assignments of error, we affirm the defendant’s convictions and sentences.
AFFIRMED.